**GOVERNMENT OF the VIRGIN ISLANDS, Appellee,**

v.

**Jose LIMA, Sr., Appellant.**

**Nos. 84–3040, 84–3713.**

United States Court of Appeals, Third Circuit.

Argued April 23, 1985.

Decided Oct. 17, 1985.

Alexander A. Farrelly (argued), Birch, deJongh and Farrelly, Charlotte Amalie, St. Thomas, V.I., for appellant.

James W. Diehm, U.S. Atty., Terry M. Halpern (argued), Hugh P. Mabe, III, Asst. U.S. Attys., Charlotte Amalie, St. Thomas, V.I., for appellee.

Before ADAMS, GARTH, and EDWARD R. BECKER, Circuit Judges.

## OPINION OF THE COURT

EDWARD R. BECKER, Circuit Judge.

Jose Lima, Sr. appeals his conviction by the District Court of the Virgin Islands, after a bench trial, of burglary in the first degree, three counts of assault in the third degree, and possession of a firearm during the crime of violence. He challenges: (1) the sufficiency of the district court's findings of guilt; (2) the district court's refusal to grant a new trial on the grounds of alleged newly discovered evidence that the key prosecution witness had manufactured her story; and (3) the district court's failure to conduct a hearing based upon the affidavits supporting the new trial motion. In denying the new trial, the district court noted its concern about the unduly harsh penalty it was obliged by law to impose: thirty years in prison with ineligibility for parole until ten years have been served. This penalty was imposed for what the district court described as

> an utterly mindless, not to say totally asinine act or series of acts on the part of the defendant stemming from the dissolution of a marriage between the defendant and the complaining witness with the award of custody of the son of the marital partners to the wife, a judgment of the Domestic Relations Court which the defendant ... cannot seem to accept and which he sought to have changed by a most bizarre and wholly unlawful scheme.

Although we, too, are concerned about the harshness of the sentence, we conclude that the district court's judgment of conviction is supported by the evidence and, given its intimate familiarity with the case, we cannot say that the court abused its discretion in determining that the newly discovered evidence would not have changed the outcome. Therefore, we will affirm the court's judgment and its order denying the new trial motion without a hearing.

## I. PROCEDURAL HISTORY

Jose Lima, Jr. ("Jose"), was arrested on April 18, 1983, upon the complaint of his former wife, Virginia Lima ("Virginia") and was charged with assault in the third degree. On May 9, 1983, the Government of the Virgin Islands filed a ten (10) count criminal information against Jose charging him with two counts of burglary in the first degree in violation of Title 14, Virgin Islands Code, section 442(1) and (4); three counts of assault in the third degree in violation of Title 14, Virgin Islands Code, section 297(2); one count of possession of a firearm during a crime of violence in violation of Title 14, Virgin Islands Code, section 2253(a); and four counts of grand larceny in violation of Title 14, Virgin Islands Code, section 1083(2) and (1). On August 5, 1983, after a bench trial, the district court found Jose guilty of first degree burglary (count I), third degree assault (counts III, IV, and V), and possession of a firearm during the commission of a crime of violence (count VI). The remaining counts were dismissed.

On August 12, 1983, pursuant to Fed.R. Crim.P. 33, Jose moved for reconsideration and vacatur of the district court's finding of guilt. On November 9, 1983, the motion was summarily denied, and Jose was sentenced to a term of ten years imprisonment on count I, fourteen months on each of counts III, IV, and V, and two and one-half years on count VI, the sentences to run concurrently. A timely notice of appeal followed, No. 80–3040. Nine months later, after obtaining another counsel, Jose moved for a new trial on the basis of newly discovered evidence. The district court denied that motion by a memorandum and order, dated October 18, 1984. In its order the district court modified the sentence on count I to comply with 14 V.I.C. § 442(1), which provides that, if a dangerous weapon of any kind is used in the commission of a burglary, the sentence must be a minimum of thirty years imprisonment, no part of the sentence to be suspended, nor parole granted or credit given for good conduct until the defendant has served a minimum of ten years. The sentence was amended accordingly. Jose filed a notice of appeal from the denial of the motion for a new trial on October 29, 1984, No. 84–3713.[1]

## II. THE TRIAL RECORD

### A. The Government's Version

On April 17, 1983, Virginia went to the beach with her friend, Monisa Stuart, and a casual acquaintance, Andre Carmona. While there, Virginia saw Jose, to whom she had been married for over four years and from whom she had recently been divorced. Virginia, Andre, and Monisa, along with Monisa's children, later returned from the beach to Virginia's home.

At approximately 9:00 p.m. that evening, Jose entered Virginia's home through a sliding glass door. With a gun in his hand, Jose threatened Andre in the kitchen and forced him to a couch in the living room. Jose then proceeded to the bathroom where Monisa was showering and ordered her to join the others in the living room. Jose prevented all of Virginia's attempts to contact the police.

Jose then ordered his captives to remove their clothes, and spread marijuana from an envelope onto a living room table. According to the government, Jose intended to photograph the group in attitudes that would make it appear that an orgy had taken place in the house in order to create the impression that Virginia was an irresponsible mother to the child born of their marriage, presumably for use in a custody hearing.

When Andre objected to the order to remove his clothes, Jose ripped his shirt, Monisa, crying, reluctantly removed her shirt and held her child close to her. Virginia attempted to persuade Jose to leave Andre and Monisa alone, calling upon him to imagine that Monisa's child was his own.

---

1. While it may not grant a Rule 33 new trial motion while an appeal is pending, the district court may deny such a motion. In such a case, the appeal from the denial of the motion is consolidated with the main appeal. *U.S. v. Blanton,* 697 F.2d 146 (6th Cir.1983).

Jose answered by again ordering Virginia to remove her clothes, but she refused. Jose then pointed the gun at her forehead, grabbed her by the neck, ripped her chains, and scratched her. When Virginia tried to reason with Jose, he hit her on the forehead and pushed her against a wall, thereby bruising her.

Jose then told Virginia that as she "would rather be with other men than to be with" him, he was going to shoot her. Virginia, recognizing the gun as belonging to Jose's father, told Jose that if he shot her, his father would get into trouble. At this point, Jose apparently became unsure of himself and fled the scene. Virginia then called the police. The responding officers described Virginia as hysterical and frightened, and testified that Monisa and Andre were also frightened. The officers recovered the torn T-shirt Andre had worn and observed marijuana on the table. Two officers went to the home of Jose's father to recover the weapon allegedly used, and found Jose asleep in bed. The weapon was found locked in the compartment of a valet chair in Jose's parents' bedroom. Jose was arrested.

The government presented its case through the testimony of Virginia, Monisa, and the police officers. Andre failed to appear at trial, fled to Puerto Rico, and was subsequently apprehended as a fugitive.[2]

### B. Jose's Version

Jose took the witness stand in his own behalf and testified, as did his father,

mother, brother Augustine, and Augustine's girlfriend Deborah Santiago, that Jose was at home on the night of the alleged incident. Jose submitted that Virginia had fabricated the incident as part of a plot against him and his family.

### C. The District Court's Findings

The district court found that Virginia and Monisa were credible witnesses and that Jose was not. The court stated that it was "incomprehensible" that Virginia Lima would fabricate this incident "out of the clear blue sky," and that it was especially implausible that she would inflict injury upon herself to prove that the incident occurred.

## III. THE NEW TRIAL MOTION

### A. The Allegations

After he was convicted and sentenced, Jose hired new counsel who in turn hired a private investigator to determine whether there were witnesses who could shed further light on the incident. The investigator located Carmen Yosiry Molina ("Molina"), Hipolita Rivera ("Rivera"), and Julio Sanchez ("Sanchez"), whose affidavits were the basis of the motion for new trial. The substance of the affidavits is as follows.

The day following the incident, Molina spoke with Virginia and, in the course of the conversations, asked her why so many police officers were around the area the night before. According to Molina, Virgin-

---

2. On April 20, 1983, Andre gave a statement to the police that generally was consistent with the government's theory of the case. Following his apprehension, Andre was cited by the district court for contempt. During his contempt hearing, Andre testified that he did not go to the beach on the day in question, and that he did not accompany Virginia and Monisa back to Virginia's home that evening. Andre contended that he had rehearsed the scenario with Virginia and Monisa, that Virginia had threatened him that if he would not do so, "something" would happen to him, and that since Virginia knew witchcraft, he was afraid of her. Andre insisted that his statement to the police was false. He also denied having spoken with Jose's father before his meeting with Assistant U.S. Attorney Terry Halpern on August 3, 1983.

However, at the same hearing, Mrs. Halpern testified that, during the August 3 meeting, Andre told her that the facts occurred in a manner consistent with the government's theory. She stated that she had tested his story, that it seemed generally correct and that it corroborated that of the other government witnesses. When Mrs. Halpern asked Andre why he had told Jose's lawyer that the April 20th statement to the police was a lie, Andre replied that he had lied to Jose's lawyer because he did not want to testify. During the contempt hearing, Andre stated he lied to Mrs. Halpern.

Commenting that Andre had "perjured" himself miserably, and that his testimony reflected "utter contempt" for the judicial process, the district court sentenced him to six months in prison.

ia replied that she had concocted a ploy to show that Jose assaulted her in her home. Virginia said that if Jose would not be hers, he would not be anybody's; she would rather see him in jail. Molina alleged that Virginia then asked her to testify as an eyewitness that the incident had occurred in this way. Molina further states in the affidavit that she had had an opportunity to speak with Andre about the incident, and that Andre had explained to her that he, Virginia, and Monisa had been drinking and smoking throughout the day of the incident, and that his story to the police was fabricated.

Rivera stated in her affidavit that she lives across the street from Virginia. On the day of the incident, Sanchez came to visit her, arriving at 5:30 p.m. At 8:00 p.m., she and Sanchez went to the porch of her home, which is situated directly across the street from Virginia's house. According to the affidavit, the two observed Virginia, Andre, and another female, whom Rivera did not recognize, inside Virginia's home. At no time did Rivera see Jose, whom she had known for many years, enter or leave the house. The affidavit of Sanchez, who was at Rivera's house until 11:00 p.m., corroborates that of Rivera in all respects.

### B. Disposition by the District Court

The district court denied Jose's motion for a new trial, concluding that the proposed new evidence was at best cumulative, and not likely to produce an acquittal at a new trial. The district court also found that the affidavit of Molina, even "if given its full face value," would not warrant granting Jose a new trial that impeached Virginia's and Monisa's testimony. It stated that this affidavit did "not ring true." *Inter alia,* the district court concluded that if what Andre allegedly told Molina were true, i.e., that the group at Virginia's house had been drinking and smoking heavily on that day and were in a terrible state of intoxication, the police would have observed intoxication when they arrived at the scene and interviewed the victims, but they did not. Additionally, the court noted that:

> With even a moderate amount of diligence these witnesses and their testimony could have been discoverable prior to trial. All three witnesses are persons well known to defendant (Jose) and who know him well. The location of Hipolita Rivera's residence could not possibly be a secret to defendant. Common prudence would have dictated that Ms. Rivera be interviewed as a neighbor likely to throw light on the matter. This could and should have been done immediately after the arrest of defendant.

The court stated that it did not have to find that Jose's alibi witnesses were untruthful, noting that they might be mistaken. It simply found that the testimony of Virginia was truthful and in many aspects corroborated. The court repeated its observation that it could not believe that the story was fabricated because of the physical evidence produced (the torn t-shirt) and the nature of preparation required to create such a scenario.

### IV. WAS THE EVIDENCE SUFFICIENT TO SUPPORT THE VERDICT?

In appeal No. 84–3040, Jose contends that his conviction must be overturned because the findings of the district court are not supported by the evidence. However, the Government presented several witnesses at trial, whose testimony provided support for the Government's position. The district court chose to believe the testimony of the government witnesses. We do not weigh the evidence or determine the credibility of witnesses in reviewing a guilty verdict, and must sustain the verdict if supported by substantial evidence, taking the view most favorable to the Government. *Glasser v. U.S.,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). See, *U.S. v. Bycer,* 593 F.2d 549 (3d Cir.1979). In particular, the factfinder's credibility determination may not be disturbed by an appellate court. *Government of Virgin Islands v. Gereau,* 502 F.2d 914, 921 (3d

Cir.1974). On this record we cannot disturb the district court's findings.

## V. DID THE DISTRICT COURT ABUSE ITS DISCRETION IN DENYING THE NEW TRIAL MOTION?

■ Fed.R.Crim.P. 33 provides in relevant part:

The court on motion of a defendant may grant a new trial to him if required in the interest of justice. If trial was by the court without a jury the court on motion of a defendant for a new trial may vacate the judgment if entered, take additional testimony and direct the entry of a new judgment.

. . . .

A motion for a new trial is addressed to the trial judge's discretion, and the scope of appellate review is whether such discretion was abused. *United States v. Adams*, 759 F.2d 1099, 1108 (3d Cir.1985); *United States v. Bujese*, 371 F.2d 120, 124–25 (3d Cir.1967). Under the rule established in *United States v. Iannelli*, 528 F.2d 1290 (3d Cir.1976), five requirements must be met before a trial court may order a new trial due to newly discovered evidence:

(a) the evidence must be in fact newly discovered, i.e., discovered since trial;

(b) facts must be alleged from which the court may infer diligence on the part of the movant;

(c) the evidence relied on must not be merely cumulative or impeaching;

(d) it must be material to the issues involved; and

(e) it must be such, and of such nature, as that, on a new trial, the newly

discovered evidence would probably produce an acquittal.

*Id.* at 1292.

■ The two factual grounds for the Rule 33 motion in this case implicate different aspects of the *Iannelli* rule. We may dispose quickly of the first grounds, i.e. the Sanchez/Rivera submissions. As the district court found, they are, at best, simply cumulative. At trial Jose presented four witnesses who testified to his alibi; the proposed testimony of Sanchez and Rivera goes only toward bolstering this alibi defense. Moreover, Sanchez and Rivera were not at the scene and were tending to their own business. Thus, their failure to observe Jose enter the house is hardly evidence of high probative value. The proffered testimony also runs afoul of the "diligence" prong of *Iannelli* because Sanchez and Rivera were friends of Jose's, one of whom resided directly across the street from the location of the incident. It would seem that they could easily have been found in time for trial by the exercise of diligence. We cannot say that the district court abused its discretion in denying the new trial motion insofar as it is based on the Sanchez/Rivera proffer.

■ The troubling aspect of the new trial motion is the affidavit of Carmen Molina or, more precisely, the portion of that affidavit relating her alleged conversation with Virginia.[3] Molina's testimony directly challenges Virginia's credibility. The district court determined at trial that she was credible. In denying the new trial motion, the district court obviously concluded that it did not need another hearing to resolve credibility issues in Virginia's (or, in practical terms, the government's) favor.

---

3. We discount the latter portion of Molina's affidavit, the foundation of which is certain alleged statements to Molina by Andre, relating that Andre told Molina how he, Virginia, and Monisa had gone to the beach and were drinking and smoking (presumably a controlled substance), and that at the house the trio continued to drink and smoke heavily. First, as we have noted above, *see supra* n. 2, the district court, after an extensive contempt hearing, had found that he had "perjured himself miserably" by

stating that he had never been to the beach on April 17, 1983, with Virginia when, in fact, there were photographs of the two taken that day at that location. Thus, Andre's credibility was seriously impaired. Second, the district court concluded that if what Andre had told Molina were true, the police officers would have noticed that the victims were intoxicated. Insofar as the new trial motion is based on these matters, its denial is unassailable.

It would, of course, have been simple to convene a hearing and bring Molina in to testify. We think that would have been the better course for the district court to have followed. Because this was a bench trial, the district court, as trier of fact, was, of course, in a unique position to know whether Molina's evidence would have affected the outcome. While we do not think that bench verdicts are immune from Fed. R.Crim.P. 33 review, our latitude is severely constricted by the Supreme Court's decision in *United States v. Johnson*, 327 U.S. 106, 66 S.Ct. 464, 90 L.Ed. 562 (1946).

In *Johnson*, the defendant was convicted of wilfully attempting to defeat and evade a large part of his income tax over a three-year period. He sought a new trial based on evidence he contended would show that a major government witness had committed perjury. The trial judge, on the basis of his personal knowledge of the case and a review of affidavits offered by both sides, concluded that the witness's testimony was true and consequently denied the new trial motion. The Court of Appeals reversed, concluding from its review of the affidavits that the trial judge's finding that the witness did not commit perjury was illogical and unreasonable. A unanimous Supreme Court reversed the Court of Appeals stating:

> The crucial question before the trial court was one of fact: Did the new evidence show that Goldstein's (the witness's) original testimony was false. The trial judge, after carefully studying all the evidence, found that there was nothing to show perjury on the part of Goldstein, that Goldstein had in fact told the truth, and concluded that a new trial was not warranted. The trial court thus

answered the above question in the negative. Two judges of the Circuit Court of Appeals thought that the evidence compelled an affirmative answer. But it is not the province of this Court or the Circuit Court of Appeals to review offers granting or denying motions for a new trial when such review is sought on the alleged ground that the trial court made erroneous findings of fact (citations omitted). While the appellate court might intervene when the findings of fact are wholly unsupported by evidence (citations omitted), it should never do so where it does not clearly appear that the findings are not supported by any evidence.

*Id.* at 111–12, 66 S.Ct. at 466.

*Johnson's* holding is difficult to overcome. In light of the district court's intimate familiarity with the facts of this case, stemming from its conduct of the trial and of the collateral contempt hearing of Andre Carmona, we are unable to conclude that the court's original determination of the truthfulness of Virginia's testimony was undermined by the Molina affidavit or that its findings are "wholly unsupported" by the evidence. More specifically, under the aegis of *Johnson*, we cannot upset the district court's determination that the tale related by Virginia was too incredible to have been fabricated, for that conclusion was reached after observing each of the witnesses who testified at trial (as well as at the contempt hearing). Having found that Virginia was truthful, the district court was not required to hear still another witness challenge her credibility. Thus, the district court did not abuse its discretion in denying the motion for new trial on grounds of newly discovered evidence.[4]

---

**4.** Jose's contention that the proper test for review of a new trial motion is that of *Larrison v. United States*, 24 F.2d 82 (7th Cir.1928) (whether but for false testimony the factfinder *might* have held differently) is unfounded. The *Larrison* test has not been adopted by this Court, *cf. United States v. Meyers*, 484 F.2d 113, 116 (3d Cir.1973). *Larrison*, unlike this case, dealt with recantation of perjured testimony. Moreover, the court stated that a new trial should be granted when "(a) The court is reasonably well satisfied that the testimony given by a material witness is false[;] (b) That without it the jury *might* have reached a different conclusion[;] (c) That the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial." 24 F.2d at 88–89. Here, the finding of the district court regarding credibility of witnesses is amply supported by evidence that the district judge in his discretion could reasonably credit. Additionally, as Jose's

The judgment of the district court will be affirmed.

defense was to contest Virginia's story, he cannot claim that he was unaware of its falsity until after the trial. Under either the *Larrison* rule or the rule of *United States v. Iannelli, supra,* our decision would be the same because of the district court's unshaken and supported belief that the testimony of Virginia was credible.