**UNITED STATES of America**

v.

**Daniel Pernell BLOUNT a/k/a "Pipe".**

No. CIV. 97–4944.
No. CRIM. 95–73–03.

United States District Court,
E.D. Pennsylvania.

Oct. 22, 1997.

---

Barbara J. Miller, Asst. U.S. Atty., Philadelphia, PA, for U.S.

Daniel Pernell Blount, pro se.

## *OPINION AND ORDER*

VAN ANTWERPEN, District Judge.

### I. INTRODUCTION

We have before us Mr. Blount's Motion Under § 2255 to Vacate, "Set Aside, or Correct Sentence by a Person in Federal Custody." Petitioner, a former prison guard at the Lehigh County Prison in Allentown, was indicted by a grand jury for Conspiracy to Distribute Cocaine and Marijuana, Distribution of Marijuana Within 1000 Feet of a School Zone, and Distribution of Marijuana, in violation of 21 U.S.C. §§ 846, 860(a)(1), and 841(b)(1)(D) respectively. The government accused Mr. Blount of being part of a conspiracy headed by Charles Riddick Sr. aimed at smuggling drugs into the Lehigh County Prison.[1] On May 8, 1995, Petitioner pled guilty to Conspiracy to Distribute Cocaine and Marijuana, Distribution of Marijuana and Aiding and Abetting, and Distribution of Marijuana Within 1000 Feet of a School Zone, Aiding and Abetting.

We held three sentencing hearings to consider the sentence in the Petitioner's case. On August 23, 1995, we held a sentencing hearing regarding the proximity of the drug

---

1. The defendants in this case were Charles Pernell Riddick Sr., Charles Pernell Riddick, Jr., Joseph Torok (a fellow prison guard), Douglas Krause, Ronald Watts, Theresa Cordero, Shannon Sicher, and the Petitioner.

transaction to school property. On November 30, 1995, we held a second hearing to determine the quantity of drugs that the defendants were involved with during the conspiracy and to consider whether the Defendant was entitled to a downward adjustment for acceptance of responsibility. At this hearing

> we accepted the testimony of [co-defendants] Shannon Sicher and Nigel McFarlane which, in addition to the testimony at trial, detailed Officer Blount's extensive involvement in the conspiracy headed by the Riddicks. Both witnesses state that Officer Blount was known among the inmates for bringing drugs into the prison. Ms. Sicher testified that Officer Blount was the officer on duty when she had screen room visits with Mr. Riddick. Ms. Sicher also testified she slipped drugs under the door to the utility closet during those visits where other inmates would be waiting to receive them. Also at the November 30 hearing, Mr. McFarlane detailed Officer Blount's specific efforts to deliver drugs to him from outside the prison.

*United States v. Blount,* 940 F.Supp. 720, 725, *aff'd United States v. Riddick,* 100 F.3d 949 (3d Cir.1996), *cert. denied,* — U.S. —, 117 S.Ct. 751, 136 L.Ed.2d 688 (1997).

At a final sentencing hearing on January 12, 1996, this court sentenced Mr. Blount to 121 months imprisonment.

Petitioner argues that he is entitled to either a new trial, or at the very least a resentencing hearing, for four reasons. Mr. Blount asserts that: (1) new evidence is available to prove that he was not a part of the Riddicks' conspiracy; (2) his counsel provided ineffective assistance at sentencing; (3) the court should grant the Petitioner a downward departure for acceptance of responsibility; and (4) the court should grant the Petitioner a downward departure under *Koon v. United States,* 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) (approving district court's downward departure because defendant police officers were susceptible to violence in prison because of their profession and the intense media scrutiny of their case), and find that Petitioner's counsel was ineffective for not asking for this downward depar-

ture at sentencing. Unfortunately for Mr. Blount, none of his arguments survive close scrutiny of the facts of this case and the governing law.

## II. DISCUSSION

### A. New Evidence

Though Mr. Blount admits that he was involved with smuggling drugs into the Lehigh County prison, he denies ever being a part of the Riddicks' conspiracy. Mr. Blount claims that he instructed his attorney to subpoena the Riddicks to his sentencing hearing. Petitioner "was confident that their testimony would reflect that there was no connection between the drugs [Petitioner] brought into the prison and the drugs smuggled by the 'Riddicks'." *Petitioner's Brief* at 5. The former prison guard asserts that this testimony could have been given without the Riddicks jeopardizing themselves since "[t]hey would not be asked to testify as to their own involvement with smuggling, only that they never had any connection with Daniel Blount concerning smuggling drugs into the prison." *Id.* Petitioner argues that

> [t]estimony from the "Riddicks" would have been persuasive in that together they knew all that went on in their conspiracy; hence, [they] could with certainty attest that Blount was unconnected with them in any way. By virtue of the conspiracy he formed and directed for many years, it is plain that Riddick Senior is a persuasive man. They would have been even more so persuasive based on testimony possibly being against their penal interests.

*Id.* at 5–6.

According to Petitioner, his counsel refused to subpoena the Riddicks without interviewing them first. Since the Riddicks' attorneys would not permit such an interview, Mr. Blount's attorney refused to subpoena the Riddicks—despite the wishes of the Petitioner. *Id.* at 6.

Mr. Blount claims that after sentencing, he set upon the "arduous task of making contact with the 'Riddicks' and asking them to testify and/or give affidavits as to [Mr. Blount's] involvement with the 'Riddick' conspiracy." *Id.* Mr. Blount has now submitted affidavits

from both Charles Riddick Sr. and Charles Riddick Jr. stating that the Petitioner had nothing to do with their drug smuggling conspiracy. *See* 6/10/97 Affidavit of Charles Pernell Riddick Sr.; 6/4/97 Affidavit of Charles Pernell Riddick Jr. Based on these affidavits, which Petitioner characterizes as new evidence, Mr. Blount asserts that he is either entitled to a new trial or to resentencing. Petitioner claims that if the court had heard this evidence at sentencing, "it is probable the Court's choice of sentence to impose would have been different." *Petitioner's Brief* at 7.

■ Mr. Blount's argument that he is entitled to either a new trial or resentencing based on new evidence must fail because he has not presented any evidence that this court may consider as new. The Third Circuit has held that five requirements must be met before a trial court may order a new trial due to newly discovered evidence:

(a) the evidence must be in fact newly discovered, i.e., discovered since trial;

(b) facts must be alleged from which the court may infer diligence on the part of the movant;

(c) the evidence relied on must not be merely cumulative or impeaching;

(d) it must be material to the issues involved; and

(e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.

*Government of the Virgin Islands v. Lima,* 774 F.2d 1245, 1250 (3d Cir.1985).

The majority of circuits have conclusively held that the requirement that evidence be discovered since trial is *not* met "simply by offering the post-trial testimony of a co-conspirator who refused to testify at trial." *United States v. Dale,* 991 F.2d 819, 839 (D.C.Cir.), *cert. denied* 510 U.S. 1030, 114 S.Ct. 650, 126 L.Ed.2d 607 (1993); *see also United States v. Freeman,* 77 F.3d 812, 817 (5th Cir.1996) ("When a defendant is aware of a codefendant's proposed testimony prior to trial, it cannot be deemed newly discovered"); *United States v. Theodosopoulos,* 48 F.3d 1438, 1448–50 (7th Cir.), *cert. denied*

*Ghanayem v. United States,* —— U.S. ——, 116 S.Ct. 191, 133 L.Ed.2d 128 (1995) (unavailable evidence not newly discovered); *United States v. Muldrow,* 19 F.3d 1332, 1339 (10th Cir.), *cert. denied,* 513 U.S. 862, 115 S.Ct. 175, 130 L.Ed.2d 110 (1994) (unavailable evidence not newly discovered); *United States v. Reyes–Alvarado,* 963 F.2d 1184, 1188 (9th Cir.), *cert. denied Gonzalez–Ramirez v. United States,* 506 U.S. 890, 113 S.Ct. 258, 121 L.Ed.2d 189 (1992) ("The Ninth Circuit has adopted the view that when a defendant who has chosen not to testify subsequently comes forward to offer testimony exculpating a codefendant, the evidence is not 'newly discovered' ") (internal quotation omitted); *United States v. Gustafson,* 728 F.2d 1078, 1084 (8th Cir.), *cert. denied,* 469 U.S. 979, 105 S.Ct. 380, 83 L.Ed.2d 315 (1984) (unavailable evidence is not newly discovered). *But see United States v. Montilla–Rivera,* 115 F.3d 1060, 1066 (1st Cir.1997) (newly discovered evidence includes evidence that was unavailable).

■ The Third Circuit is one of the few circuits that has not ruled directly on this issue. However, the Third Circuit's decisions on similar issues convince us that we should follow the majority opinion that newly discovered evidence is not the same thing as newly available evidence.

First of all, in *Lima* the Court of Appeals explicitly stated that before a trial court may order a new trial due to newly discovered evidence "the evidence must be in fact newly discovered, i.e., discovered since trial[.]" 774 F.2d at 1250. In this case, Mr. Blount did not discover the evidence (that his co-conspirators would testify that he had nothing to do with their conspiracy) after his sentencing hearings. He had this information before he was ever sentenced. Therefore, it cannot, under *Lima,* be deemed newly discovered.

Second, the Third Circuit in *United States v. Bujese,* 371 F.2d 120, 125 (3d Cir.1967), held that the record amply supported the "rejection of the so-called 'newly discovered' evidence reflected in the statements of the defendant's brother that he, and not the defendant, [committed] the robbery," when

The two brothers ... were named as the principals in the robbery in the indictment they were represented by the same counsel when they pleaded not guilty at the arraignment; Jeffrey asked for and received a severance because he wanted his case tried separately from the defendant and Hutchings; the defendant was advised by the indictment and at the arraignment proceeding that his brother Jeffrey was charged as a co-principal in the robbery.

*Id.*

In *Bujese* it seems that the Court of Appeals held that evidence cannot be deemed new when the defendant has constructive knowledge of the evidence before trial. In the instant case, Mr. Blount admits to having *actual* knowledge of the Riddicks' allegedly exculpatory evidence before the sentencing hearing. Thus, it would be peculiar to allow a new trial for a defendant who had actual knowledge of the evidence before trial, but not for a defendant who merely had constructive knowledge of the new evidence.

Third, the Third Circuit has held that a district court did not err in denying a defendant's motion for a new trial "on the ground of untimeliness, since counsel, even if not [defendants], knew of the incident before, so it was not newly discovered evidence, and the motion was not made within seven days after trial." *United States v. Provenzano,* 620 F.2d 985, 997 (3d Cir.), *cert. denied* 449 U.S. 899, 101 S.Ct. 267, 66 L.Ed.2d 129 (1980). Again, it would be inconsistent to bar a new trial when the defendant himself did not know about the new evidence in *Provenzano,* but to grant a new trial in the instant case where the Petitioner and his counsel were fully aware of the allegedly exculpatory evidence.

Finally, this court has, in the past, refused to allow a defendant to file a motion for a new trial more then seven days after the original verdict under the newly discovered evidence exception to Fed.R.Crim.P. 33, where "the motion for a new trial is based on facts known to the defendant at the time of the trial[.]" *United States v. Robles,* 814 F.Supp. 1233, 1238–39 (E.D.Pa.), *aff'd* 8 F.3d 814 (3d Cir.1993). It would be hypocritical to say that evidence that was known to a defendant at trial can be new evidence for the purpose of a § 2255 motion, but not for a motion pursuant to Fed.R.Crim.P. 33.

Furthermore, we believe that allowing a § 2255 petitioner (who knows of his co-defendants' proposed exculpatory testimony before trial) to obtain a new trial based on affidavits submitted by co-defendants who had not testified at the petitioner's trial would make for dangerous policy. A co-defendant who has already been convicted of a crime and is languishing away in jail has little to lose by lying to save a friend's hide. Indeed, "it would encourage perjury to allow a new trial once co-defendants have determined that testifying is no longer harmful to themselves." *Reyes–Alvarado,* 963 F.2d at 1188.

In Mr. Blount's case, Petitioner admits that he knew of the Riddicks' allegedly exculpatory evidence before his sentencing hearing. *See Petitioner's Brief* at 8–10. In fact, the decision of Mr. Blount's attorney not to subpoena the Riddicks is a major basis of Petitioner's ineffective assistance of counsel claim. *Id.* Therefore, since Mr. Blount's proposed evidence is not newly discovered, he is not entitled to either a new trial or sentencing hearing on this basis.

■ Furthermore, even if Mr. Blount's evidence were considered newly discovered, he would still not be entitled to a new trial or sentencing hearing because the Riddicks' affidavits would not be likely to produce an acquittal, as required by the circuit court in *Lima.* Indeed, Daniel *Pernell* Blount, Charles *Pernell* Riddick Sr., and Charles *Pernell* Riddick Jr. are all cousins. This, coupled with the fact that the Riddicks have little to lose by lying for Mr. Blount, would make any testimony from these two witnesses highly suspect. Furthermore, Charles Riddick Sr. would have difficulty explaining why he and his brother, Kenneth Riddick, were taped on April 5, 1992, talking about a package of drugs that had not yet "come through" the Prison because "everybody's dealing with that motherfucker, Pipe [Mr. Blount]." [GC 8A, p. 2]. Riddick Sr. would also have to explain how he was able to smuggle drugs through the screen visit

room while Mr. Blount was on duty there, as Ms. Sicher had testified.

On the other hand, we have already accepted the testimony of two of Mr. Blount's co-defendants that the ex-prison guard was in fact an integral part of the Riddicks' conspiracy:

> [At Petitioner's sentencing hearing] we accepted the testimony of [co-defendants] Shannon Sicher and Nigel McFarlane which, in addition to the testimony at trial, detailed Officer Blount's extensive involvement in the conspiracy headed by the Riddicks. Both witnesses state that Officer Blount was known among the inmates for bringing drugs into the prison. Ms. Sicher testified that Officer Blount was the officer on duty when she had screen room visits with Mr. Riddick. Ms. Sicher also testified she slipped drugs under the door to the utility closet during those visits where other inmates would be waiting to receive them. Also at the November 30 hearing, Mr. McFarlane detailed Officer Blount's specific efforts to deliver drugs to him from outside the prison.

*Blount*, 940 F.Supp. at 725.

With all this detailed evidence against the Petitioner already provided by co-defendants Sicher and McFarlane, we cannot find that the Riddicks' conclusory statements would probably lead to Mr. Blount's acquittal. Therefore, Mr. Blount is not entitled to a new trial. And, we can say for a fact that this court would not be persuaded by the Riddicks' testimony to reduce Petitioner's sentence. Thus, a resentencing hearing *would not be required, even if this court could consider the Riddicks' testimony as new evidence.* Mr. Blount's argument that new evidence entitles him either to a new trial or to a new sentencing hearing is therefore completely without merit.

## B. *Ineffective Assistance of Counsel*

### 1. Standard

The right to assistance of counsel is guaranteed by the Sixth Amendment of the United States Constitution. This right has been deemed fundamental by the Supreme Court; it cannot be denied to a defendant absent intentional and actual waiver. *Johnson v. Zerbst*, 304 U.S. 458, 462, 58 S.Ct. 1019, 1022, 82 L.Ed. 1461 (1938). The Supreme Court has set out a two-prong test to establish a claim of ineffectiveness of counsel. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). A petitioner must show both that: (1) his counsel's conduct was deficient and "fell outside the wide range of professionally competent assistance" and (2) the petitioner was prejudiced as a result of that deficient conduct. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064; *United States v. DeRewal*, 10 F.3d 100, 104 (3d Cir.1993), *cert. denied*, 511 U.S. 1033, 114 S.Ct. 1544, 128 L.Ed.2d 196 (1994).

To satisfy the first prong, deficiency, a petitioner must show that his lawyer's conduct fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2064–65. In evaluating such a claim, we "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. at 2065. We may not use the benefit of hindsight to second-guess tactical decisions made by an attorney unless they are unreasonable. *See id.* at 690, 104 S.Ct. at 2065–66; *Diggs v. Owens*, 833 F.2d 439, 444–45 (3d Cir.1987), *cert. denied*, 485 U.S. 979, 108 S.Ct. 1277, 99 L.Ed.2d 488 (1988) ("An attorney is presumed to possess skill and knowledge in sufficient degree to preserve the reliability of the adversarial process and afford his client the benefit of a fair trial. Consequently, judicial scrutiny of an attorney's competence is highly deferential"). Moreover, the mere fact that a tactic has been unsuccessful does not necessarily indicate that it was unreasonable. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

If the first prong is proven, a petitioner must also prove the second prong, prejudice. To show prejudice, a petitioner must show that there is a reasonable probability that there would have been a different outcome; that the deficient performance "deprived the defendant of a trial whose result is reliable." *DeRewal*, 10 F.3d at 104, *citing Strickland*, 466 U.S. at 690, 104 S.Ct. at 2065–66. "A reasonable probability is a probability suffi-

cient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. We must examine the trial with our focus not on the outcome, but on whether the error so affected the adversarial balance that the trial was rendered unfair and the verdict rendered suspect. *Lockhart v. Fretwell,* 506 U.S. 364, 369, 113 S.Ct. 838, 842–43, 122 L.Ed.2d 180 (1993).

### 2. Counsel's Alleged Failure to Subpoena the Riddicks

Petitioner claims that his counsel was ineffective for failing to subpoena the Riddicks to testify at his sentencing hearing. Mr. Blount asserts that if the Riddicks were subpoenaed they would have testified that he had nothing to do with their conspiracy to smuggle drugs into the Prison.[2]

■ We can deny Mr. Blount's motion without a hearing because, even if the Riddicks had testified at Petitioner's sentencing hearing, we would have not altered our sentence. Petitioner fails to meet the second *Strickland* requirement since he has not shown that he was prejudiced as a result of his counsel's allegedly deficient conduct. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064.

On May 8, 1995, Mr. Blount pled guilty to Conspiracy to Distribute Cocaine and Marijuana. At the Petitioner's plea hearing, the government read a complete factual statement into the record in the Petitioner's presence:

> With respect to Count 1 [conspiracy] your Honor, the Government's evidence would show at trial that at various times during the time that Mr. Blount was employed as a guard at the Lehigh County Prison, a correctional officer, that he did bring quantities of cocaine and marijuana into that facility on behalf of several inmates, including defendants in this case, including but not limited to, Douglas Krause, Pernell Riddick, *Charles Pernell Riddick, Sr., Charles Pernell Riddick, Jr.,* and other inmates including cooperation witness Nigel McFarlane.

*Blount,* 940 F.Supp. at 734–35, *quoting* Tr. 5/8/95 at 32 (emphasis added).

Mr. Blount admitted to the facts as read by the government, except Petitioner denied ever delivering drugs *directly* to Charles Riddick Sr. However, Mr. Blount did admit to delivering the drugs to Douglas Krause who then redistributed the drugs to Charles Riddick Sr. and other inmate associates who were a part of the Riddick Conspiracy. *See Blount,* 940 F.Supp. at 735.

On December 17, 1995, Mr. Blount wrote a letter to this court asserting that his attorney, Mr. Donato, had been ineffective and asking that we allow him to withdraw his guilty plea to conspiracy. We appointed Mr. Blount new counsel and held a hearing on January 3, 1996, to consider whether Mr. Blount was entitled to withdraw his guilty plea. Mr. Blount argued that he had come to realize, after conducting some of his own legal research, that he had not been involved in a conspiracy with the Riddicks. We denied Mr. Blount's request and specifically found that Mr. Blount had lied to the court at that hearing. Tr. 1/3/96 at 64. We concluded that Mr. Blount knowingly and intelligently confessed to being a part of the conspiracy.

Even if we believed the Riddicks' proposed testimony it would not change our sentence.[3]

---

2. Mr. Blount was represented by two attorneys in this case. His first attorney, Mr. Donato, represented the Petitioner at his guilty plea. After Mr. Blount pled guilty, he wrote a letter to the Court on December 17, 1995 claiming that Mr. Donato was ineffective and asking that he be allowed to withdraw his guilty plea. We rejected Petitioner's efforts to withdraw his plea. *Blount* 940 F.Supp. at 732–38. We did, however, appoint Mr. Caplan to represent the Petitioner at sentencing.

3. We note, however, that we would have a very hard time believing the testimony of these two men who have little to lose considering the fact

that they are serving life sentences. *See United States v. Freeman,* 77 F.3d 812, 817 (5th Cir. 1996) (district court could consider the fact that witness had nothing to lose by testifying falsely); *United States v. Alejandro,* 527 F.2d 423, 428 (5th Cir.), *cert. denied,* 429 U.S. 844, 97 S.Ct. 124, 50 L.Ed.2d 115 (1976) (it is not unusual for obviously guilty defendant to try to assume the entire guilt). Indeed, any testimony that Mr. Blount knew nothing of their role in the conspiracy flies in the face of the facts of this case. As we have already discussed, Ms. Sicher has already testified that Mr. Blount allowed her to smuggle drugs to Charles Riddick Sr. during screen visits. And Mr. Riddick would be hard pressed to ex-

Clearly, as the government has already argued, even if we assume that Mr. Blount never dealt directly with the Riddicks, the ex-guard's knowledge of what was occurring in the prison was extensive and was enough for him to know that dealing with Krause and McFarlane would get drugs into prison in a widespread fashion. Tr. 1/3/96 at 59. On this evidence alone, we could find that Mr. Blount was a participant in the conspiracy.

Indeed, we have already found that Mr. Blount was deeply rooted in the conspiracy, even assuming that Mr. Blount had not been directly involved with the Riddicks. The former guard personally smuggled drugs into the Prison on a regular basis, helped inmates and others bring drugs into the Prison during contact and "screen" visits, and helped conceal and protect the conspiracy by violating his duties as a correctional officer by not reporting his own and others' drug trafficking to the proper authorities. *Blount,* 940 F.Supp. at 729.

Thus, even if we believed the Riddicks' affidavits which state that they did not know of Mr. Blount's role in the conspiracy, and vice-versa, we would have still sentenced Mr. Blount as harshly as we had for violating his duty as a prison guard and betraying the trust placed in him by the Commonwealth by helping to turn the Lehigh County Prison into a haven for illegal drugs. Since Petitioner cannot show that he was prejudiced by his counsel's alleged ineffectiveness, this ineffective assistance of counsel claim must fail.[4]

### 3. Allegations that Sentencing was a Mockery, a Sham and a Farce

Petitioner claims that he was representing at sentencing with nothing more; "than a warm rambling body by his side." *Petitioner's Brief* at 12. Mr. Blount asserts that he is entitled to a new trial because his counsel's ineffective representation rendered his sentencing hearing a "mockery, a sham and a farce." *Id.* at 11. We disagree.

To prove that his attorney was ineffective, the Petitioner must show that his lawyer's conduct fell below an objective standard of reasonableness. *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064–65. In evaluating such a claim, we "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. at 2065.

■ Mr. Caplan did an admirable job of representing the Petitioner at the January 3, 1996 hearing where Mr. Blount requested to withdraw his guilty plea. At the January 12, 1996 hearing this court did criticize Petitioner's counsel for misspeaking, failing to research an issue properly, and mixing up sentencing with the law of conspiracy. Tr. 1/12/96 at 48–53. Yet, considering the sentencing hearing in its entirety, we conclude that while we would not give Mr. Caplan an "A" for his advocacy at the sentencing hearing, we cannot find that his lawyering fell below an objective standard of reasonableness. We vehemently disagree with Petitioner's insulting characterization of his attorney

---

plain why he was taped on April 5, 1992, talking about a package of drugs that had not yet "come through" the Prison because "everybody's dealing with that motherfucker, Pipe [Mr. Blount] ." [GC 8A, p. 2].

**4.** We further do not believe that the Petitioner has provided any evidence that his counsel was, in fact, ineffective. Neither of the Riddicks' affidavits assert that they would have testified at Mr. Blount's sentencing hearing had they been subpoenaed. The Riddicks did not even testify at their own trial. Although drug quantities were in question at their sentencing, the Riddicks did not testify at their sentencing and did not even make a statement beyond the assertion of Mr. Riddick Jr. that he was 27 years old. And, at the time of Mr. Blount's sentencing hearing, the Riddicks case was before the Court of Appeals and

there is no doubt that testifying for Mr. Blount would have posed a serious risk for the Riddicks. In fact, Petitioner's first attorney tried to depose Charles Riddick Sr. for the purpose of Mr. Blount's sentencing, but counsel's efforts proved unsuccessful. *See* Tr. 11/27/95 at 1–13.

Furthermore, Mr. Blount never complained about his attorney's failure to subpoena the Riddicks when he had the opportunity to do so at sentencing. At Mr. Blount's sentencing hearing, we gave Petitioner the opportunity to address the court. We asked Mr. Blount if his new counsel, Mr. Caplan, had failed to do anything that Petitioner wanted done. Mr. Blount made no mention of his attorney's failure to subpoena the Riddicks. Had Mr. Blount informed the court about his wish to subpoena the Riddicks, we could have addressed the issue at that time.

as a "warm rambling body." And we find that Petitioner's sentencing hearing was not a sham, a mockery or a farce. Mr. Blount's argument that his attorney's performance at sentencing was objectively ineffective is without merit.

### C. Acceptance of Responsibility

 Mr. Blount's contention that he is entitled to an adjustment for acceptance of responsibility is intrinsically tied to his "new evidence" argument. However, as we have already stated, we cannot consider Mr. Blount's "new evidence" that he did not participate in the Riddicks' conspiracy to smuggle drugs into the Prison. We therefore have no evidence that Mr. Blount is willing to take responsibility for his role in the Riddick drug conspiracy—to which Mr. Blount pled guilty. Indeed, two of Mr. Blount's co-defendants testified regarding the ex-guard's important role in the conspiracy. We have already found, after extensive sentencing hearings, that

> Officer Blount jointly undertook to perform at least three important roles in the distribution conspiracy: (1) to personally smuggle drugs into the Prison on a regular basis; (2) to help inmates and others bring drugs into the [P]rison during both contact visits and "screen" visits; and (3) to help conceal and protect the conspiracy by violating his duties as a correctional officer by not reporting his own and other's drug trafficking to Prison authorities.

*Blount*, 940 F.Supp. at 729.

Yet, as Petitioner's Brief plainly shows, Mr. Blount still refuses to fully admit to his role in smuggling drugs into the Lehigh Prison. And, since we cannot accept the new evidence marshaled by the Petitioner to deny that role, we cannot find that he is deserving of a downward departure for acceptance of responsibility while he still denies being an integral part of the Riddick Conspiracy.

### D. Downward Departure Under United States v. Koon

Petitioner argues that he is entitled to a downward departure, under *Koon* since, as a former prison guard, whose case "made quite a little stir," *Petitioner's Brief* at 20, he is at risk of receiving substantial abuse from his fellow inmates. Mr. Blount further asserts that his counsel was "ineffective in not raising this brick-in-face obvious argument." *Petitioner's Brief* at 20. While we are duly impressed with the colorful imagery invoked by the Petitioner, we do not believe that this argument should have hit his attorney like a ton of bricks. We also disagree with Mr. Blount's contention that he is entitled to a downward departure under *Koon*.

 Mr. Blount's attorney was not ineffective for failing to raise the *Koon* issue at sentencing. Indeed, the Supreme Court did not uphold the California district court's use of a law-enforcement officer's susceptibility to abuse to justify a downward until June, 13, 1996—months after Mr. Blount's sentencing hearing. Furthermore, such a departure had not yet been recognized by the Third Circuit at the time of the Petitioner's sentencing. Mr. Blount's attorney cannot be declared ineffective for failing to raise what was, at the time, a novel argument.

 Even if *Koon* had been decided by the Supreme Court before Mr. Blount's sentencing, it would not have applied to the Petitioner's case. In *Koon* the Supreme Court reasoned that the extraordinary notoriety of the defendants, coupled with their status as police officers, entitled the district court to grant a downward departure. *Koon*, 518 U.S. at ——, 116 S.Ct. at 2053. Indeed, the High Court stated:

> The Court of Appeals did not dispute, and neither do we, the District Court's finding that '[t]he extraordinary notoriety and national media coverage of this case, coupled with the defendants' status as police officers, make Koon and Powell unusually susceptible to prison abuse,'.... [D]ue in large part to the existence of the videotape and all the events that ensued [the Rodney King trial and the subsequent riots], 'widespread publicity and emotional outrage ... have surrounded this case from the outset,' [*United States v. Koon,*] 833 F.Supp. [769] at 788 [(C.D.Cal.1993)], which led the District Court to find petitioners 'particularly likely to be targets of abuse during their incarceration,' *ibid.* The District Court's

conclusion that this factor made the case unusual is just the sort of determination that must be accorded deference by the appellate courts.

*Koon,* 518 U.S. at ——, 116 S.Ct. at 2053.

Mr. Blount asserts that his case, though not quite on par with the Rodney King trial, "made quite a little stir itself." *Petitioner's Brief* at 20. According to the Petitioner, since "prison guards are perhaps more despised by prisoners than are police officers," he is entitled to a downward departure under *Koon.* We disagree.

Mr. Blount's case did not receive even a small percent of the media attention that had been received by the two Rodney King trials. The infamous Rodney King videotape, played again and again by the national media, ensured that most television watching persons would be informed about the incidents that led to Koon's and Powell's two trials. The Los Angeles riots that followed the officers' acquittal in the state action brought even more notoriety to both the Los Angeles Police Department and its most (in)famous officers.

The instant case, on the other hand, bears little resemblance to *Koon.* No television crews covered the Easton courthouse day and night. No riots broke out along the banks of the Lehigh River. Mr. Blount was not convicted of outrageous and brutal crimes against criminal suspects; rather he pled guilty to being the inmates' best friend, a key link in their drug smuggling chain, and,

as one inmate remembered, someone who was "so hip" that he was practically an inmate himself. Tr. 5/23/95 at 130 (Trial of co-defendant Charles Riddick Sr.).[5]

Thus, Mr. Blount's counsel was not ineffective for failing to cite either *Koon* or the arguments marshaled in that case, which had not (as of January 12, 1996) been decided by the Supreme Court. And, even today, Mr. Blount is not entitled to a sentencing reduction under *Koon.* As we have discussed, Petitioner's case is readily distinguishable from the situation in *Koon.* We further note that *Koon* did not require a sentencing reduction in the Rodney King case; it merely allowed the district court to exercise its discretion to depart from the sentencing guidelines. We see no reason to exercise our discretion to reduce Mr. Blount's sentence under the facts of his case. *Cf. United States v. Bissell,* 954 F.Supp. 841, 896 (D.N.J.1996) (rejecting downward departure for wife of the former county prosecutor, despite the intense media attention devoted to the case). Thus, Petitioner's last argument, like the three that preceded it, must fail.

### III. CONCLUSION

Mr. Blount is not entitled either to resentencing or to a new trial. We cannot consider the "new evidence" marshaled by the Petitioner since that evidence, though perhaps "newly available," is not "newly discovered." And, even if we could consider this evidence, it would not entitle the former prison guard

---

**5.** Mr. Blount claims that sooner or later his status as an ex-guard will be discovered:

> Lehigh County prison detained some 900 inmates. Blount served as a guard at Lehigh County Prison for nearly nine years. In this nine years he must have guarded multiple "thousands" of prisoners. Given the high recidivism rate today, it would be very unlikely that Daniel Blount will not "sooner or later" during his ten year sentence of incarceration run into someone who identifies him as a prison guard and puts the word out all over prison. Nick the Greek would give odds on it.

*Petitioner's Brief* at 21.

Once Mr. Blount's cover is blown, the Petitioner is convinced that he will be subject to retaliation from the prisoners.

While this argument may seem convincing at first, it unravels under closer examination. The

departure authorized in *Koon* does not result merely from the defendants' status as law enforcement officials, but from the intense publicity directed toward their case. Therefore, Petitioner's argument that he deserves a departure under *Koon* because one of his former prisoners might recognize him holds little merit. Petitioner's argument here does not rest on the publicity directed toward his case, but merely focuses on his status as a former prison guard. Under *Koon* this is not enough.

Furthermore, it is interesting to note that even though Mr. Blount has been imprisoned for almost two years since he was sentenced for his crimes, Petitioner's habeas corpus motion does not raise even one incident of abuse that has resulted from the media attention provided to his case and from his former position as a prison guard. We therefore question whether Mr. Blount's fears of inmate retaliation are realistic.

to a new sentencing hearing or to a new trial. Mr. Blount's attorneys were not ineffective for failing to subpoena the Riddicks since Petitioner has not shown that any alleged error prejudiced his case. And, Mr. Caplan's performance at sentencing did not fall below an objective standard of reasonableness. Petitioner's argument that he deserves a reduction in his sentence for acceptance of responsibility is completely without merit. Mr. Blount is also not entitled to a reduction in his sentence under *Koon*, and his attorney was not ineffective for failing to raise the issue at sentencing.

For the above stated reasons, we will deny Mr. Blount's motion for relief pursuant to 28 U.S.C. § 2255.