

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-4-2002

# Govt of VI v. Viust

Precedential or Non-Precedential: Non-Precedential

Docket No. 01-2557

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Govt of VI v. Viust" (2002). *2002 Decisions.* Paper 321.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/321

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 01-2557
_____

GOVERNMENT OF THE VIRGIN ISLANDS

v.

ALEXANDER VIUST,

Appellant

_____

On Appeal from the District Court of the
Virgin Islands, Appellate Division
(D.C. Crim. App. No. 96-242-1)

District Judges:  The Honorable Raymond L. Finch; the Honorable Thomas K. Moore;
and the Honorable Patricia D. Steele, Territorial Court Judge, sitting by designation
_____

Submitted Pursuant to LAR 34.1(a)
Monday, May 13, 2002
Before: AMBRO and FUENTES, Circuit Judges, and GARTH, Senior Circuit Judge

(Opinion Filed: June 4, 2002)

_____

_____

OPINION OF THE COURT
_____

FUENTES, Circuit Judge:

After a jury trial  in the Territorial Court of the Virgin Islands, defendant, Alexander Viust, was convicted of one count each of first degree murder and first degree assault. Viust was sentenced to life imprisonment for the murder conviction and a fifteen year term for the assault conviction. On appeal to the District Court of the Virgin Islands, Appellate Division, Viust challenged, among other things, the trial court's denial of his pretrial motion to suppress evidence against him and the trial court's denial of his motion for a new trial based on newly discovered evidence.

In a per curiam opinion, the Appellate Division affirmed Viust's conviction. See Anderson v. Gov't of the Virgin Islands, Crim. App. No. 1996-242 (D.V.I. 2001). Upon a thorough review of the record on appeal, we discern no error and, therefore, we affirm the judgment of the Appellate Division.

I

On November 30, 1994, the Government filed an information charging appellant Alexander Viust with murder in the first degree of Malik Meyers and assault with a deadly weapon upon George Van Holten, each in relation to a shooting that took place on January 9, 1994, in the Paul M. Pearson Gardens Housing Complex ("PMP"). The

government contended that the shootings were the result of a rivalry between two competing street gangs, the "West Side Posse" and the "Hospital Ground Posse," and that Robbie Smalls, the leader of the West Side Posse, had ordered the killing of Meyers and Van Holten.

The government's case against Viust relied heavily on the testimony of Viust's cousin, Danny Guzman. The trial testimony established that on January 8, 1995, Viust, his co-defendant Avery Anderson, Robbie Smalls and one other individual, all members of the West Side Posse, attended a jam session above a Wendy's restaurant in St. Thomas. At the jam, Viust saw his cousin, Danny Guzman, and told him to leave because "something was going down." Guzman testified that he saw that the four were armed with guns and so decided to heed Viust's advice and to leave the area. As he was leaving, he saw the four men, joined by one other, conferring at a street corner.

Meanwhile, Meyers and Van Holten, whom the police believed to be members of the Hospital Ground Posse, left the jam and walked toward home, crossing through PMP. Danny Guzman happened to be walking behind the two at some distance. Guzman testified that he next saw Viust and Anderson run toward Meyers and Van Holten as they crossed a basketball court in PMP. Guzman stated that Viust had a gun in each hand, one a 9 mm and the other a 32 caliber, and that Anderson carried a TEK-9, a semiautomatic pistol that uses a 10 to 50 round magazine.

Guzman saw Viust run to the bleachers along the basketball court and begin firing while Anderson ran directly behind Meyers and Van Holten and opened fire. Meyers was shot and killed instantly, while Van Holten was shot fifteen times and seriously injured.

Immediately after the shooting, Guzman walked away from the basketball court, toward his aunt's apartment in PMP. As he approached, he ran into Viust, who also lived there. Guzman saw two handguns stuck in Viust's waistband. Guzman exclaimed, "I just saw what happened." Viust replied, "I ain't got nothing to do with it. Partner want to do it by [him]self. Avery (Anderson) deal with it [him]self."

As this shooting was taking place, Smalls, the West Side Posse's leader, walked up to a truck full of young men in Mandela Circle and shot into it, killing one person and wounding another. Smalls was then shot himself by an off-duty police officer and chased in the direction of PMP. While searching for Smalls, police came upon Meyers and Van Holten, sprawled on the ground near the basketball court in PMP.

Homicide Detective Granville Christopher responded to the PMP shooting and then proceeded to the hospital to locate and interview witnesses. In the hospital parking lot, Christopher found about twelve witnesses to the Mandela Circle shooting, standing near the truck into which Smalls had shot. The witnesses began to describe to Christopher what had occurred. They all claimed to have seen a "Spanish or Arab" looking man conferring with Smalls immediately prior to the shooting.

While Christopher was speaking to these witnesses, Viust pulled up to the hospital, in a car that Christopher recognized was owned by Smalls. Several of the witnesses immediately identified Viust as the "Spanish or Arab" looking man who had been with Smalls immediately prior to the truck shooting. They yelled to Christopher to "stop the car! Stop the car! That guy was in the shooting!" Based on these statements and his knowledge of recent gang-related activity between the two rival "posses," Christopher arrested Viust in connection with the Mandela Circle murder.

While Viust was in custody, police performed a gunshot residue test on his hands. Although the results of that test were positive, Viust was released soon thereafter. He was later picked up and, in November 1994, was charged with the murder and assault at PMP.

## II

On April 5, 1995, Viust filed a motion to suppress evidence, namely the results of the gunshot residue test. Viust claimed that the police had lacked probable cause when they had initially arrested him for the Mandela Circle truck shooting. As a result, Viust argued, any evidence obtained with regard to that murder was inadmissible as the fruit of an illegal arrest. On March 2, 1996, the Territorial Court denied Viust's motion to suppress the results of the gunshot residue test. A motion to reconsider that decision was also denied by the Territorial Court.

On May 20, 1996, after a seven day jury trial, Viust was convicted, along with co-defendant Anderson, of the murder of Meyers, and of aggravated assault against Van

Holten. On May 24, 1996, Viust and Anderson filed a motion for a new trial, pursuant to Fed. R. Crim. P. 33, claiming that the Government had denied them the opportunity to interview, prior to trial, Danny Guzman ("Guzman"), an eyewitness to the shooting, who later testified for the Government at the trial.

On July 10, 1996, both Viust and Anderson were sentenced to life imprisonment for the murder charge and fifteen years for the assault charge. On August 9, 1996, Viust moved to "expand and supplement" his motion for a new trial to include allegedly newly discovered evidence. Viust claimed to have only recently discovered the identity of Andrew "Danny" Williams, a friend and co-eyewitness with Guzman to the shooting. Viust also offered Danny's newly obtained affidavit, containing statements that contradicted Guzman's testimony.

On September 20, 1996, the Territorial Court denied Viust's motion for a new trial. The Court determined that Viust's failure to discover "Danny's" identity prior to trial was due primarily to the defendant's lack of diligence rather than to any alleged intransigence on the part of the Government.

On October 9, 1996, Viust timely filed an appeal to the District Court of the Virgin Islands, Appellate Division. Viust presented four claims, including two that are relevant to this appeal. The District Court rejected all of Viust's arguments and upheld his conviction by the Territorial Court.

                                III

The District Court for the Virgin Islands, Appellate Division, had jurisdiction to review the orders of the Territorial Court under 4 V.I.C. 33. We exercise jurisdiction over Viust's appeal from the Appellate Division under 48 U.S.C. 1613a (c). Viust now challenges the trial court's denial of his pretrial motion to suppress evidence and the trial court's denial of his motion for a new trial based on newly discovered evidence. Our review of a determination of probable cause for a warrantless arrest or search is made de novo. United States V. Harple 202 F.3d 194, 196 (3d Cir. 1999). We review a trial court's denial of a Rule 33 motion for a new trial based upon newly discovered evidence for abuse of discretion. See Gov't of the Virgin Islands v. Lima, 774 F.2d 1245 , 1250 (3d Cir. 1985)

                                IV

We turn first to Viust's contention that the Territorial Court erred in denying his motion to suppress the results of the gunshot residue test. Viust argues, once again, that the police had lacked probable cause when they arrested him for the Mandela Circle shooting and, as a result, evidence taken while Viust was under arrest for that crime was inadmissible as the fruit of an illegal arrest.

In reviewing Viust's motion to suppress, both the District Court and the Territorial Court concluded that, "taken in their totality, the facts and circumstances known to the arresting officer at the time Viust was arrested were sufficient to warrant a prudent person to believe that Viust had committed an offense in connection with the Mandela Circle shooting." App. at 18. See also Merkle v. Upper Dublin School District, 211 F.3d 782, 789 (3d Cir., 2000) (Probable cause to arrest exists where "[at the time] the arrest [is] made... the facts and circumstances within the arresting officer's knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that" the arrestee had violated the law).

After a thorough review of the record, we affirm the rejection of Viust's motion to suppress the gunshot residue evidence for substantially the same reasons stated by the Territorial Court. We write further on this subject simply to note that this Court has previously concluded that the "knowledge of a credible report from a [single] credible eyewitness" can be sufficient to demonstrate probable cause for a warrantless arrest. Id., at 790. The statements of several of the eyewitnesses to the Mandela Circle shooting identifying Viust, along with Detective Christopher's prior knowledge of Viust's affiliations and recent gang-related violence, were more than enough to meet this Circuit's standard for probable cause.

We next address Viust's contention that the Territorial Court abused its discretion in denying his Rule 33 motion for a new trial that was based upon the allegedly newly discovered evidence, namely the identity and affidavit of "Danny." In denying Viust's motion, the Territorial Court noted that the defense had in its possession, at least six months prior to trial, Guzman's statement that he was with a friend, also named "Danny," on the night of the shooting. The Court further reasoned that:

> Defendant Viust could easily have discovered Williams' identity. The mention of "Danny" in the presence of Guzman on the night of the crimes would [have] implicate[d] Williams, a good friend of both Guzman and Viust, as a plausible choice. Viust knew Guzman was coming to testify against him; therefore, all of Guzman's statements warranted intense scrutiny for purposes of cross-examination. Thus, the information was available to Viust. Knowing Williams' identity, how long would it take for someone to find "a good friend of many years" on St. Thomas?

App. at 867. Accordingly, the Territorial Court held that Viust had failed to meet his burden for obtaining a new trial based on newly discovered evidence.

On appeal, the District Court determined that the record clearly supported the trial court's finding that Viust's counsel was served by mail with Guzman's statements at least six months before trial, and that the defense had ample opportunity to discover the identity of "Danny." The Court further reasoned that, even assuming that defense counsel did not realize Danny's identity and significance until Guzman testified at trial, nothing in the record showed that defense counsel either requested or were denied any additional time to locate this supposedly key eyewitness prior to the end of trial. Therefore, the District Court concluded that "given the facts [that were] before the [Territorial Court], we can easily conclude that the trial judge did not abuse his discretion." App. at 31.

We find the analysis of this issue by both the Territorial and the District Court to be well-reasoned and persuasive and we therefore affirm substantially for the reasons stated by each.

                                        V

In conclusion, we now affirm the decision of the District Court, Appellate Division, for the reasons stated herein.




_____

TO THE CLERK OF THE COURT:

Kindly file the foregoing Opinion.

                                        By the Court,


                                                    /s/ Julio M. Fuentes
                                        Circuit Judg