UNITED STATES of America

v.

Anousone SIMALAVONG
Wisarn Panaram.

Criminal No. 2:95–CR–50–01–02.

United States District Court,
D. Vermont.

Oct. 12, 1995.

Mark David Oettinger, Lisman & Lisman, Burlington, VT and Peter Boynton Schubart, Burlington, VT, for defendants.

Gary G. Shattuck, Rutland, VT, for the U.S.

*OPINION AND ORDER*

SESSIONS, District Judge.

*I. Introduction*

This matter is before the court as a result of Defendants' Motion for a Downward Departure pursuant to the United States Sentencing Guidelines, § 5K2.0. The defendants were charged with conspiring to transport illegal aliens in violation of 18 U.S.C. § 371 and 8 U.S.C. § 1324(a)(1)(A)(ii). Both pled guilty to that offense and are ready for sentencing. Because the offense involved the transporting of six aliens, there was a two level increase, giving the defendants an offense level of nine, despite their acceptance of responsibility, and placing the applicable guideline range in Zone B of the Sentencing Table. According to § 5B1.1(a)(2) and § 5C1.1(c)(3), the court may impose a sentence of probation that includes a condition or combination of conditions requiring intermittent confinement, community confinement, or home detention. Because the defendants are Canadian citizens, they are ineligible for this non-incarceratory alternative. Therefore, defendants seek a one point downward departure, based on the defendants' alien status, to allow the Court to impose a sentence of probation under § 5B1.1(a)(1) of the Guidelines.

*II. Facts of the Case*

Both defendants in the instant case have minimal criminal records and substantial work histories. Defendant Panaram is married and has three children, ages twelve, eight, and five. The defendant has a Bachelor's degree in Religious Studies from a seminary in Thailand, the place of his original citizenship. In addition, the defendant has completed two years in the mechanical engineering program at Concordia University in

Montreal, Canada. He has a consistent employment record, including being a founder of the "Thai Cinema" and being the owner and manager of the "Thailand Restaurant". In 1994, because the Montreal market became saturated with Thai restaurants, the defendant lost his business. He had a brief period of unemployment following this loss, but has been employed in another restaurant for the past six weeks. The defendant has no prior criminal record.

Defendant Simalavong likewise has close community ties, having resided in the Montreal area for the past ten years, and a consistent employment history. Currently, he works in a restaurant in Montreal and intends to remain there. He has a minor criminal record for an offense that occurred a number of years ago.

Neither defendant was an organizer of the conspiracy. The defendants did not arrange for the illegal aliens' presence in the United States. Rather, their involvement was limited to transporting the illegal aliens after they were within the United States.

■ Because of the defendants' involvement in their communities, their extensive work history, their placement in Criminal History Category I, and their secondary role in this conspiracy, the Court has determined that incarceration is not appropriate. The Court finds that a sentence of probation that includes a condition or combination of conditions that substitute intermittent confinement, community confinement, or home detention for imprisonment, pursuant to § 5C1.1(c)(3) of the Guidelines, is proper. However, because the defendants are not U.S. citizens, the Court is unable to impose this sentence. Without a downward departure, the Court's only recourse is to impose a sentence of imprisonment, which the facts do not warrant. Therefore, the Court shall make a one point downward departure, authorizing a non-incarceratory sentence under § 5B1.1(a)(1) of the Guidelines, as hereinafter discussed.[1]

### III. Discussion

A departure from the Sentencing Guidelines is appropriate if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b) (West 1985 & Supp.1995), United States Sentencing Commission, *Guidelines Manual*, § 5K2.0, p.s. (Nov. 1994). As the Second Circuit has stated, the power to depart affords a " 'sensible flexibility' to insure that atypical cases are not shoe-horned into a Guidelines range that is formulated only for typical cases." *U.S. v. Rogers*, 972 F.2d 489, 493 (2d Cir.1992). *See also U.S. v. Merritt*, 988 F.2d 1298, 1309 (2d Cir.1993), *cert. denied*, 508 U.S. 961, 113 S.Ct. 2933, 124 L.Ed.2d 683 (1993) (holding that the authority to depart is fundamental to the satisfactory functioning of the Sentencing Guidelines).

■ Departure is warranted for those cases which fall outside the "heartland." U.S.S.G. § 5K2.0. As a general rule, one's status as an alien is not sufficient to take the case out of the "heartland," and thus is not grounds for a downward departure. *U.S. v. Restrepo*, 999 F.2d 640, 644 (2d Cir.1993), *cert. denied*, 510 U.S. 954, 114 S.Ct. 405, 126 L.Ed.2d 352 (1993). *See also U.S. v. Mendoza–Lopez*, 7 F.3d 1483, 1487 (10th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1552, 128 L.Ed.2d 201 (1994) (denying a downward departure for a deportable alien based on the "well-reasoned" decision of the Second Circuit in *U.S. v. Restrepo* ); *U.S. v. Nnanna*, 7 F.3d 420, 422 (5th Cir.1993) (holding that collateral consequences of alien status may not be a basis for a downward departure); *U.S. v. Smith*, 27 F.3d 649, 655 (D.C.Cir. 1994) (stating that the circumstances justifying a downward departure based on a defendant's alien status may be quite rare). Because alienage is a characteristic shared by a large number of people, it is not "ordinarily relevant" in making a departure determination. *Restrepo*, 999 F.2d at 643–44.

■ Nonetheless, alienage may be considered as a basis for a downward departure where its effect is extraordinary in nature or

---

1. At oral argument, the government made no objection to a one point downward departure given the highly unique circumstances of these defendants.

degree. *Id.* at 644. *See also, Rivera v. U.S.,* No. 92 Civ. 6100, 1995 WL 437691, at *5 (S.D.N.Y. July 25, 1995) (construing *Restrepo* as holding that collateral consequences of a defendant's alienage might serve as a valid basis for a downward departure). The United States District Court for the Southern District of New York, interpreting *Restrepo,* has concluded that a defendant's citizenship may be considered as a factor not only in the duration of his or her sentence, but also in the conditions of incarceration. *Lugo–Delacruz v. U.S.,* Nos. 93 Civ. 5819, 92 Cr. 225, 1994 WL 68325, at *1 (S.D.N.Y. Feb. 28, 1994). Expounding on the Second Circuit's holding, the D.C. Circuit has stated that a downward departure may be appropriate where the defendant's status as an alien is likely to cause an arbitrary increase in the severity of his sentence. *Smith,* 27 F.3d at 655. "For a departure on such a basis to be reasonable the difference in severity must be substantial and the sentencing court must have a high degree of confidence that it will in fact apply for a substantial portion of the defendant's sentence." *Id.* The court further must determine that the greater severity is not deserved. *Id.*

The Second Circuit found that the facts of *Restrepo* did not create such an extraordinary effect so as to warrant a downward departure. However, *Restrepo* is distinguishable from the case at bar. In *Restrepo,* the defendant, a deportable alien, was ineligible to serve a part of the last 10% of his sentence in a community custody program such as a halfway house or home confinement. Though the defendant claimed that his inability to serve his sentence under less restrictive conditions was due to his alien status only, there were other factors affecting the unavailability of less restrictive confinement.

Under the Sentencing Reform Act, to which the defendant was subject, the Bureau of Prisons, has discretion in granting home detention or community confinement under the so-called 10% rule. The Sentencing Reform Act provides that the Bureau of Prisons "*shall, to the extent practicable,* assure" that a prisoner spend some part of the last 10% of his term of imprisonment under conditions that will permit the prisoner to reacclimate him or herself to the community. 18 U.S.C.

§ 3624(c) (West 1985 & Supp.1995) (emphasis added). The statute does not mandate that all prisoners be afforded the opportunity to participate in such a program, but only allows the Bureau to do so if practicable. *Restrepo,* 999 F.2d at 645. Thus, the statutory language "to the extent practicable" offers the Bureau a measure of discretion and flexibility such that it may deny less restrictive confinement to both U.S. citizens and non-citizens, as it sees fit. No similar language exists in § 5B1.1(a)(2) of the Guidelines. More importantly, this Court has exercised its discretion to determine that an incarceratory sentence is inappropriate in this case. If the defendants were U.S. citizens, the Court would unquestionably impose a sentence of home detention or community confinement, as provided in § 5C1.1(c)(3).

Secondly, the purpose of § 3624(c) is to help prisoners to prepare for re-entry into the community. *See* 18 U.S.C. § 3624(c). Because a deportable alien is not to be released back into the community, Congress arguably did not intend § 3624(c) to apply to deportable aliens. *Id.* Section 5B1.1(a)(2) has no similar stated purpose. Rather, the statutory purposes of sentencing are to promote respect for the law, provide just punishment for the offense, achieve general deterrence, and protect the public from further crimes by the defendant. U.S.S.G., ch. 5, Pt. B, intro. comment. These purposes are not impinged by the granting of a downward departure in this case.

Even reading the *Restrepo* holding broadly, as the Fifth Circuit has, to stand for the proposition that the unavailability of more lenient conditions of imprisonment is not a basis for departure, the Court finds the present case distinguishable in that it represents the difference between an unwarranted incarceratory sentence and a non-incarceratory sentence. *Nnanna,* 7 F.3d at 422. Because of the defendants' limited involvement in the conspiracy, negligible criminal records, and extensive work history, the Court has determined that they would not receive a sentence of imprisonment if they were U.S. citizens. Hence, the discretionary element which existed in *Restrepo* is absent in this case. It is only the defendants' Canadian citizenship that subjects them to more severe treatment than their American counterparts.

In making its findings, the Court is fully aware of the importance of the *Restrepo* holding and its progeny, and therefore, it restricts its holding to the highly unique facts of this case. When a Canadian citizen would necessarily be given a non-incarceratory sentence in the Court's discretion, but cannot be afforded one solely because of his or her alien status, this is outside the "heartland" and warrants a downward departure pursuant to § 5K2.0. The Court finds that these circumstances present precisely the kind of extraordinary effect referred to by the *Restrepo* court, but cautions that this case is a very narrow exception to the general rule that one's alien status is not "ordinarily relevant" to granting a downward departure under the Sentencing Guidelines.

*IV. Conclusion*

For the reasons set forth above, Defendant's Motion for a Downward Departure by one criminal offense level is hereby GRANTED.