**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellant,

v.                                                                  No. 95-5771

DELORES ELEASE HAIRSTON,
Defendant-Appellee.

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Graham C. Mullen, District Judge.
(CR-94-153-MU)

Argued: March 8, 1996

Decided: September 16, 1996

Before MURNAGHAN and MOTZ, Circuit Judges, and LEGG,
United States District Judge for the District of Maryland, sitting by
designation.

_____

Reversed and remanded by published opinion. Judge Motz wrote the
opinion, in which Judge Murnaghan and Judge Legg joined.

_____

**COUNSEL**

**ARGUED:** Brian Lee Whisler, Assistant United States Attorney,
Charlotte, North Carolina, for Appellant. E. Fitzgerald Parnell, III,
POYNER & SPRUILL, L.L.P., Charlotte, North Carolina, for Appel-
lee. **ON BRIEF:** Mark T. Calloway, United States Attorney, Ashe-
ville, North Carolina, for Appellant.

_____

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

The Government appeals the district court's decision to depart from the Sentencing Guidelines due to the defendant's "extraordinary restitution." The defendant's restitution, offered to settle her civil liability to her employer, equaled less than half the amount she embezzled and came not from her own funds but from the generosity of friends. Concluding that the district court abused its discretion in finding that these circumstances merited departure, we reverse.

I.

The parties do not dispute the underlying facts of this case. Delores Hairston worked as a branch manager for the First Union National Bank of North Carolina. Beginning in August 1987, Hairston began diverting bank funds to her personal use. Her managerial position enabled her to avoid detection for more than five years, and she ultimately embezzled a total of $607,777.08. Her scheme came to an end, however, when an internal bank audit in 1993 uncovered certain "irregularities" attributable to her conduct. When bank officials confronted Hairston about the irregularities, she admitted the theft.

In May 1994, during an interview with agents of the Federal Bureau of Investigation, Hairston disclosed that she had expended all of the embezzled funds. She spent the stolen money: (1) to pay for her children's college expenses; (2) to make up for losses on defaulted loans of bank customers; (3) to provide personal loans to friends and others; (4) to contribute to church-related activities; and (5) to buy personal items, including clothes and jewelry.

While federal authorities pursued their investigation, Hairston attempted to reach a civil settlement with the bank. On August 5, 1994, Hairston gave a sworn statement to the bank in which she averred that she had spent all the diverted funds and had few available assets. On October 3, 1994, a federal indictment was returned charging Hairston with bank embezzlement, making false entries in bank records, and bank fraud.

2

On February 28, 1995, Hairston and the bank entered into a settlement agreement and release. Hairston, through the generosity of friends and her church, repaid the bank $250,000 to settle her civil liability. In return, a bank official promised to testify, during Hairston's criminal proceedings, as to his belief that the $250,000 payment constituted "extraordinary restitution."

Thereafter, on March 8, 1995, Hairston entered into a plea agreement with the Government in which she agreed to plead guilty to the charge of bank fraud. At a sentencing hearing, Hairston introduced the bank officer's testimony and contended that her efforts at restitution merited a departure from the Guidelines.

The district court accepted Hairston's argument, finding that the Bank would not have recovered any of its loss but for Hairston's extraordinary efforts at restitution. The court determined that her efforts merited a departure from the Guidelines and reduced her offense level by five, from seventeen to twelve. The court then sentenced Hairston to six months imprisonment, followed by six months probation and three years of supervised release; without the departure, her sentencing range would have been twenty-four to thirty months imprisonment.

II.

The Government contends that the district court improperly considered the $250,000 Hairston obtained from her friends in determining whether to grant Hairston a departure from the appropriate Guideline range. The Government does not maintain that "extraordinary restitution" may never provide a proper basis for departure from the Guidelines, but asserts that under the facts of this case, the district court abused its discretion in finding Hairston's restitution "extraordinary." Hairston counters that because the total amount of restitution was substantial and because the victim of the embezzlement-- the bank -- would have recovered nothing absent the restitution, the district court properly found the circumstances "extraordinary" and appropriately departed from the Guidelines.

A.

The Supreme Court recently clarified the appropriate standard of appellate review of a district court's decision to depart from the

Guidelines. <u>Koon v. United States</u>, #6D6D 6D# U.S. ___, 116 S. Ct. 2035 (1996). <u>Koon</u> had been argued but not decided when we heard oral argument in this case. Accordingly, we held this case in abeyance while awaiting the Supreme Court's opinion. In the wake of it, we asked the parties to file supplemental briefs on the opinion's impact on this case, which they have now done.

In <u>Koon</u>, the Supreme Court directed that "appellate court[s] should not review the departure decision <u>de novo</u>, but instead should ask whether the sentencing court abused its discretion." <u>Id.</u> at 2043. The Court explained that a deferential standard of review was appropriate because although the Guidelines were intended to cabin the sentencing court's discretion in the typical case, <u>see</u> U.S.S.G. Ch. 1, Pt. A, intro., Congress and the Sentencing Commission had not intended to wholly divest district courts of their traditional sentencing functions. <u>Id.</u> at 2044. As the Court explained:

> Acknowledging the wisdom, even the necessity, of sentencing procedures that take into account individual circumstances, <u>see</u> 28 U.S.C. § 991(b)(1)(B), Congress allows district courts to depart from the applicable Guideline range if "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, <u>not adequately taken into consideration</u> by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). To determine whether a circumstance was adequately taken into consideration by the Commission, Congress instructed courts to "consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission." <u>Ibid.</u>

> Turning our attention, as instructed, to the Guidelines Manual, we learn that the Commission <u>did not adequately take into account</u> cases that are, for one reason or another, "<u>unusual</u>." 1995 U.S.S.G. ch. 1, Pt. A, intro. comment. 4(b).

<u>Id.</u> (emphasis added).

To aid sentencing courts in determining if an asserted basis for departure removes a case from the "usual" (the "heartland" for which

4

the guideline was designed), the Commission lists several factors that may never provide a proper basis for departure (e.g., race, sex, national origin, etc.). "[W]ith the exception of those listed factors," the Commission states that it "does not intend to limit the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds for departure in an unusual case." Id. (quoting 1995 U.S.S.G. ch. 1, Pt. A, intro. comment. 4(b)). For further guidance, however, the Commission enumerates certain other factors that it views as either "encouraged," see U.S.S.G § 5K2.0 et seq., or "discouraged" bases for departure. See U.S.S.G. § 5H1.1 et seq.

If the special feature suggested as a basis for departure is an encouraged factor, then a court can depart on that basis, if that feature is not already taken into account in the applicable guideline. If the special feature is a discouraged factor, or an encouraged factor already taken into account in the applicable guideline, then a court can depart "only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." Koon, 116 S. Ct. at 2045. Finally, if the special feature is not mentioned at all in the Guidelines, before departing on this basis, a court must consider the "structure and theory" of the relevant individual guideline and the Guidelines as a whole, bearing in mind that departures on the basis of factors not mentioned in the Guidelines will be "highly infrequent." Id.

The Supreme Court in Koon repeatedly emphasized the sentencing court's primacy in determining whether a factor merits departure in the individual case. Due to its greater experience with sentencing determinations, the district court enjoys an "institutional advantage" over an appellate court in making this determination. Id. at 2047.

In performing its role, the sentencing court's duty is to make a "refined assessment of the many facts bearing on the outcome, informed by [the court's] vantage point and day-to-day experience in criminal sentencing." Id. at 2046-47. Thus, a sentencing court must determine not as a general matter whether a suggested basis for departure is within the heartland, but whether it is within the heartland given the specific facts of the particular case. Id. Although the sentencing court may rely on its individual sentencing experience, this factor is not solely determinative and the question of "[w]hether a given factor is

5

present to a degree not adequately considered by the Commission, or whether a discouraged factor nonetheless justifies departure because it is present in some unusual or exceptional way, are matters determined in large part by comparison with the facts of other guidelines cases." Id. at 2047.

An appellate court generally gives "substantial deference" to the district court's decision to depart, but appellate review is not an "empty exercise." Id. at 2046. Totally unfettered discretion on the district court's part would simply raise anew the problems with sentencing disparity that Congress created the Sentencing Guidelines scheme to prevent. Thus, in performing its review, an appellate court, like the sentencing court, must consider both existing case law and the "structure and theory" of the Guidelines as a whole, and, with due regard to the district court's institutional advantage, assess whether the circumstances of the particular case are so exceptional as to take the case out of the heartland and warrant departure from the Guidelines.

We set out the Supreme Court's analysis in Koon at some length because the standard of appellate review established therein uses a different nomenclature than the one previously applied in this circuit. We had previously applied a multi-part analysis involving:

> (1) a de novo standard [of review] to determine whether the reasons the district court used to support its departure encompassed a factor "not adequately taken into consideration by the Sentencing Commission in formulating the guidelines," (2) a clearly erroneous standard to review whether the district court had adequate factual support to depart on the basis of the factor, (3) an abuse of discretion standard to determine whether the factor is of sufficient importance to justify a sentence outside the guideline range, and (4) an abuse of discretion standard to review whether the extent of the departure was reasonable.

United States v. Brown, 23 F.3d 839, 841 (4th Cir. 1994) (citing United States v. Hummer, 916 F.2d 186, 192 (4th Cir. 1990), cert. denied, 499 U.S. 970 (1991)).

Koon abolishes "de novo" review and substitutes a "unitary abuse of discretion standard." 116 S. Ct. at 2048. This review for abuse of

6

discretion, however, includes a legal analysis as to whether the Commission listed certain factors as forbidden, discouraged, or encouraged departure bases. We do not accord a district court's legal conclusions on these questions any particular deference. However, we do defer to a sentencing court's fact-based determination as to whether the presence of a suggested feature removed a case from the "heartland" for which the guideline was designed. Because "[a] district court by definition abuses its discretion when it makes an error of law," our overall review is thus for abuse of discretion. Id.

B.

The feature in this case that potentially takes it outside the Guidelines' "heartland" is, of course, Hairston's efforts at restitution. The district court concluded that a departure on the basis of extraordinary restitution was warranted for the following reasons:

> The Court finds as a fact that the funds available, made available to First Union National Bank would not have been made available, that these are not simply going out and borrowing money from credit unions and the like . . . , but do represent extraordinary efforts at restitution. And under the circumstances, everybody's better off when extraordinary efforts at restitution pay the bank back substantial fractions of the monies that they lost which would otherwise not be available, that that as a factual matter exists in this case, and I therefore believe that I have the discretion to depart downward and will depart downward to a level 12.

The district court, of course, did not have the benefit of the Koon decision when making this determination. Accordingly, it failed to make any analysis as to whether the Commission forbade, discouraged, or encouraged departure based on "extraordinary restitution." Thus, in this case, we consider that question in the first instance.

In considering whether extraordinary restitution is a forbidden departure factor, as the Supreme Court explained, we are "limited to determining whether the Commission has proscribed, as a categorical matter, consideration of the factor." Koon , 116 S. Ct. at 2051.

7

Nowhere in the Guidelines is restitution listed as a proscribed factor. Thus, the Commission has not forbidden departure on this basis.

Nor has the Commission expressly included restitution in the Guidelines' lists of encouraged or discouraged factors. See U.S.S.G. § 5K2.0 et seq., § 5H1.1 et seq. Although the Commission has not listed restitution as a factor to consider in departing from the Guidelines, restitution is listed as a factor supporting a reduction within the Guidelines. Restitution is included among the factors courts should consider in determining whether to reduce a sentence for the defendant's "acceptance of responsibility." See U.S.S.G. § 3E1.1 Application Note 1(c) (enumerating seven factors a court should consider in determining whether to reduce a sentence for acceptance of responsibility, including the "voluntary payment of restitution prior to adjudication of guilt").

When the Commission designates a factor as a basis for a reduction within the Guidelines, this implies that the factor is discouraged as a basis for departure from the Guidelines, or alternatively, that the factor is encouraged -- at least as a basis for reduction -- but has already been taken into account. In either case, ordinarily a court should not depart based on such a factor. See United States v. Broderson, 67 F.3d 452, 458 (2d Cir. 1995) ("Ordinarily, payment of restitution is not an appropriate basis for departure under Section 5K2.0 because it is adequately taken into account by Guidelines Section 3E1.1" and is therefore a "discouraged" basis for departure).

However, simply because the Commission designates a factor as an appropriate basis for a reduction does not mean that the factor may never properly support a district court's departure decision. As Congress and the Commission have directed, a factor that the Guidelines address may still provide a proper ground for departure when present to such a degree that a case is removed from the"heartland" for which the guideline was designed. See 18 U.S.C.§ 3553 (incorporated in Guideline § 5K2.0) (sentencing court may depart when court finds "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration" in formulating the Guideline range) (emphasis added).

Thus, restitution, although taken into account in the guideline permitting a reduction for acceptance of responsibility, can provide a

8

basis for a departure when present to such an exceptional degree that it cannot be characterized as typical or "usual." See United States v. Garlich, 951 F.2d 161, 163-64 (8th Cir. 1991) (ruling that district court has discretion to depart from Guidelines due to extraordinary restitution if defendants show that the circumstances of their cases are atypical); United States v. Brewer, 899 F.2d 503, 509 (6th Cir.) (departure may be warranted where defendant shows repayment constituted an "exceptional circumstance"), cert. denied, 498 U.S. 844 (1990); see also United States v. Hendrickson , 22 F.3d 170, 176 (7th Cir.) (same), cert. denied, 115 S. Ct. 209 (1994). Cf. United States v. Bailey, 975 F.2d 1028 (4th Cir. 1992) (affirming district court decision not to depart from the Sentencing Guidelines where there was no evidence that the court believed it was without power to depart based on "extraordinary restitution").

## C.

We turn now to review of the district court's conclusion that Hairston's efforts at restitution removed this case from the "heartland" of restitution cases and merited departure. Relying in part on the bank officer's testimony, the district court found Hairston's restitution extraordinary because, due to her efforts and her friends' generosity, the bank recovered "substantial fractions of the monies that [it] lost which would otherwise not [have] be[en] available."

The $250,000 Hairston repaid the Bank is, of course, a large amount of money -- but it constitutes less than half the amount she embezzled. Consideration of existing caselaw reveals no case in which such a small percentage in restitution has been held to constitute an exceptional circumstance meriting departure. Cf. United States v. Arjoon, 964 F.2d 167, 171 (2d Cir. 1992) (finding departure unwarranted where defendant stole 5,000 shares of stock worth $489,000, and then returned 2,000 shares plus $51,000 (approximately fifty percent of the amount stolen), because the restitution involved was not "substantially in excess of that which is ordinarily involved") (quoting U.S.S.G. § 5K2.0); United States v. Carey , 895 F.2d 318, 322-24 (7th Cir. 1990) (departure unwarranted where defendant paid $200,000 out of victim's $220,000 loss); United States v. Davis, 797 F. Supp. 672, 677 (N.D. Ind. 1992) (departure warranted where defendant repaid

9

$775,000 of victim's loss assessed at between $500,000 and $800,000).

Indeed, our sister circuits have found even full restitution not an appropriate ground for departure from the Guidelines, but simply ground for a reduction within the Guidelines. See United States v. Bean, 18 F.3d 1367, 1369 (7th Cir. 1994) (finding repayment of the entire amount fraudulently obtained from a bank ($75,000) constituted the restitution contemplated under Note 1(c) to § 3E1.1 and the defendant was therefore limited to a reduction within the Guidelines); Brewer, 899 F.2d at 509 (prompt repayment of entire $25,000 stolen only entitled defendant to a reduction within Guidelines, not departure).

Courts have generally found restitution in amounts greater than that stolen to be a possible ground for departure. See Garlich, 951 F.2d at 163 (district court erred in failing to exercise its discretion to determine if defendant who turned over assets of $1.4 million to cover loss of $253,000 merited departure for extraordinary restitution); United States v. Miller, 991 F.2d 552, 553-54 (9th Cir. 1993) (remanding for district court to determine whether $58,000 repaid for $45,000 embezzled constituted atypical restitution); United States v. Lieberman, 971 F.2d 989, 996 (3d Cir. 1992) (affirming departure where defendant agreed to pay "$34,000 more than he thought he owed and to which he pled guilty").

We do not suggest that a defendant must necessarily provide more than full restitution (or full restitution for that matter) in order to remove her case from the ordinary. For example, exceptional acceptance of responsibility might be indicated by partial restitution gained through especially hard work, such as by taking a second job. Repayment, however, of less than half of the money stolen under the circumstances of this case appears far removed from "exceptional." When a defendant asserts that a restitution payment is so exceptional as to remove it from the ordinary (thereby meriting departure, rather than simply reduction), the same theory that supports the guideline reduction for restitution should also support the departure. Since the Guidelines consider restitution a form of "acceptance of responsibility," extraordinary restitution should provide a ground for departure when it indicates an extraordinary acceptance of responsibility. See

10

United States v. Weinberger, 1996 WL 431811, *3 (4th Cir. 1996) ("extraordinary restitution . . . is a basis for downward departure only to the extent that it shows a `degree of acceptance of responsibility that is truly extraordinary and substantially in excess of that which is ordinarily present'") (quoting Hendrickson , 22 F.3d at 176); see also United States v. Crook, 9 F.3d 1422, 1426 (9th Cir. 1993) ("extraordinary restitution is a basis for downward departure only to the extent it shows acceptance of responsibility") (quotation omitted), cert. denied, 114 S. Ct. 1841 (1994).

Here, Hairston did not pay the bank $250,000 in restitution until after she had been criminally indicted, in order to settle her civil liability, and in the hope of receiving a reduced sentence. The timing of the restitution payment, after criminal proceedings had begun, does not suggest an exceptional acceptance of responsibility, cf. Garlich, 951 F.2d at 162-63 (finding significant that the defendant discussed the settlement before learning of the FBI investigation and offered to settle even though his attorney advised him that it was unnecessary), nor does her motive. See Miller, 991 F.2d at 553 (stressing that the "voluntary" nature of restitution is questionable when defendant's primary motivation is to settle a civil lawsuit); see also United States v. Bennett, 60 F.3d 902, 905 (1st Cir. 1995) (same); United States v. Flowers, 55 F.3d 218, 222 (7th Cir.) (same), cert. denied, 116 S. Ct. 261 (1995).

For similar reasons, the generosity of Hairston's friends indicates little about Hairston's acceptance of responsibility for her conduct. See Miller, 991 F.2d at 553 ("restitution is relevant to the extent it shows acceptance of responsibility"); Bennett , 60 F.3d at 905 (same). Cf. United States v. Bolden, 889 F.2d 1326, 1340-41 (4th Cir. 1989) (borrowed money used to repay bank may be relevant in permitting reduction within Guidelines but does not justify departure).

Finally, while the district court, of course, could consider the bank officer's testimony that Hairston's payment constituted extraordinary restitution, the relevance of that testimony is minimal. We do not doubt that absent the generosity of Hairston's friends the bank would have recouped little. However, the victim's opinion that Hairston's efforts were extraordinary, even if not offered in exchange for the civil settlement, provides little basis for the court's conclusion that

11

the restitution was extraordinary. The court's conclusion must be based on sentencing experience, consideration of other guidelines cases, and the Sentencing Commission's guidance.

Accordingly, although we defer to the district court's greater experience, and although we recognize that the district court sees many more guidelines cases than appear in published opinions, see Koon, 116 S. Ct. at 2047, because the circumstances of the restitution in this case are so far removed from those found exceptional in existing caselaw, we hold that the district court abused its discretion in finding Hairston's restitution provided a proper basis for departing from the Guidelines.

III.

For the foregoing reasons, we reverse Hairston's sentence and remand to the district court for resentencing in accordance with this opinion.

REVERSED AND REMANDED