**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellant,

v.                                                          No. 98-4907

GEORGES DEBEIR,
Defendant-Appellee.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
William M. Nickerson, District Judge.
(CR-98-251-WMN)

Argued: May 7, 1999

Decided: July 29, 1999

Before WIDENER, MOTZ, and TRAXLER, Circuit Judges.

_____

Vacated and remanded by published opinion. Judge Motz wrote the
opinion, in which Judge Widener and Judge Traxler joined.

_____

**COUNSEL**

**ARGUED:** Bonnie S. Greenberg, Assistant United States Attorney,
Baltimore, Maryland, for Appellant. Beth Mina Farber, Chief Assis-
tant Federal Public Defender, Baltimore, Maryland, for Appellee. **ON
BRIEF:** Lynne A. Battaglia, United States Attorney, Baltimore,
Maryland, for Appellant. James Wyda, Federal Public Defender, Bal-
timore, Maryland, for Appellee.

_____

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

A grand jury indicted Georges DeBeir of one count of traveling in interstate commerce with the intent to engage in a sexual act with a minor, in violation of 18 U.S.C.A. § 2423(b) (West Supp. 1999). After DeBeir pled guilty to this offense, the district court, departing downward three levels from the applicable range set forth in the United States Sentencing Guidelines, sentenced him to five years probation. The Government appeals. Because the circumstances and consequences of this case do not render it sufficiently atypical or extraordinary to remove it from the heartland of cases covered by the applicable guideline, the district court abused its discretion in departing downward. Accordingly, we vacate DeBeir's sentence and remand for resentencing.

I.

On April 1, 1998, DeBeir, a 58-year-old male, first contacted Kathy, who represented herself as a 14-year-old girl, through an internet chat room. Actually, "Kathy" is a federal agent. In their initial e-mail conversation, DeBeir told Kathy: "I am looking to meet a teenage girl very discreetly once in a while strictly for oral sex."

Thereafter DeBeir and Kathy exchanged numerous sexually explicit e-mail communications, during which he encouraged her to keep their conversation and planned rendevous a secret because, if exposed, he "could be in big trouble with the law." He explained "if a man my age is caught in a motel room together with a 14-year old girl . . . I'll go to jail for many years . . . even at age 14, I'm sure you're smart enough to know that," and noted that he had more to lose than Kathy if they were discovered because he "would go to jail for a LONG time" whereas she was only "a minor."

Throughout these conversations, DeBeir discussed meeting Kathy so that he could teach her about oral sex. He explained that he would pay her $150 for each visit. DeBeir also explained that he had made several prior arrangements with other teenage girls, but that when the

2

meeting times came, the girls did not appear. Expressing disappointment with these prior attempts, DeBeir repeatedly urged Kathy to follow through on her commitment to meet him, and stressed the importance of making it easy for him to pick her out of the crowd when they were to meet. The two then discussed where and when to meet and what they would be wearing.

On May 26, 1998, DeBeir contacted Kathy and told her that he would come from New York to Baltimore to see her on June 3. They agreed to meet at a mall in downtown Baltimore and, from there, to proceed to a nearby hotel. DeBeir told Kathy that he would go to AAA to get information on hotels in downtown Baltimore. He expressed concern about checking in to a hotel together because of the difference in their ages and suggested that they check in separately in order to avoid drawing any attention to their meeting; Kathy agreed to his plan. At DeBeir's request, Kathy also agreed to bring her school uniform with her to the hotel in a gym bag so that they could "play a neat little game," which would involve Kathy dressing in the uniform without any underwear and DeBeir performing oral sex on her while in her uniform.

On June 3, 1998, DeBeir confirmed his meeting with Kathy over the internet and then traveled from New York to Baltimore; he arrived at the mall to meet Kathy as scheduled. An FBI agent, dressed as Kathy, also went to the designated spot and waited there for approximately one hour. As the agent began to leave, DeBeir approached her, confirmed that she was "Kathy," said that he "owe[d] [her] an apology," and asked if they could take a walk.

FBI agents then arrested DeBeir; they recovered a list of area hotels, with phone numbers, from his pocket. The FBI later found a transcript of the e-mail conversations with Kathy and similar transcripts from conversations with other purported teenage girls in DeBeir's car and at his home. The conversations began in the summer of 1997 and continued through May 1998.

DeBeir pled guilty to one count of traveling interstate with intent to engage in a sexual act with a juvenile, in violation of 18 U.S.C.A. § 2423(b). The parties agreed that the Sentencing Guidelines provide a base level of 15 for this offense, see 1997 U.S.S.G. § 2A3.2, and

3

that DeBeir merited a two-level downward adjustment for acceptance of responsibility, see id. § 3E1.1, bringing the offense level to 13. With a criminal history category of I (because DeBeir had no prior convictions), the sentencing range for the offense, after the adjustment for acceptance of responsibility, would be 12-18 months.

The district court, however, also granted DeBeir a three-level downward departure, bringing the offense level to 10, with a sentencing range of 6-12 months. The district court departed on the basis of a combination of factors, see id. § 5K2.0, which either singly or together indicated that a longer sentence would have an adverse effect on DeBeir "to an exceptional degree." The court sentenced DeBeir to five years probation, conditioned on a six-month term of home detention with electronic monitoring. On appeal, the Government challenges only the three-level downward departure.

II.

Congress enacted the Sentencing Guidelines to eliminate inequality in sentencing. Through the Guidelines "Congress sought reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders." U.S.S.G. Ch. 1, Pt. A, intro. comment 3, at 2; see also United States v. Harriott, 976 F.2d 198, 202-03 (4th Cir. 1992).

To achieve this aim, the Guidelines dictate that in the usual case, a court must sentence within the applicable guideline range. Thus, ordinarily a guideline (despite its nomenclature) constitutes a mandate that a sentencing court must adhere to, rather than simply a guide that it may choose to follow. See 18 U.S.C.A.§ 3553(b). As the Supreme Court recently explained, "[a] district judge now must impose on a defendant a sentence falling within the range of the applicable Guideline, if the case is an ordinary one." Koon v. United States, 518 U.S. 81, 92 (1996) (emphasis added); see also Mistretta v. United States, 488 U.S. 361, 367-68 (1989).

In extraordinary cases, however, a sentencing court may permissibly depart from the designated sentencing range. To do so, a court must "find[ ] that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consider-

4

ation by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." Koon, 518 U.S. at 92 (quoting 18 U.S.C. § 3553(b)). In this way, the Guidelines "acknowledg[e] the wisdom, even the necessity, of sentencing procedures that take into account individual circumstances." Id.

The Guidelines and their commentary facilitate this limited flexibility. The Guidelines do prohibit a court from taking some factors into account in deciding whether to deviate from the prescribed sentencing range, but they forbid consideration of only a handful of factors. See, e.g., U.S.S.G. § 5H1.10 (race, sex, national origin, religion, creed, and socio-economic status). Otherwise, the Guidelines encourage -- but do not require -- courts to consider some factors in making departure decisions, see, e.g., id. §§ 5K2.10 (victim provocation as encouraged factor toward downward departure); 5K2.7 (disruption of government function as encouraged upward departure factor), and discourage -- but do not forbid -- consideration of other factors, see, e.g., id. § 5H1.2 (education and vocational skills).

A court can depart on the basis of an encouraged factor if the applicable guideline has not already taken that factor into account. See Koon, 518 U.S. at 95-96. If the specific guideline at issue has already taken an encouraged factor into account, or if the Guidelines discourage reliance on a factor, a court can still depart, but "only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." Id. at 96; see also United States v. Hairston, 96 F.3d 102, 105-06 (4th Cir. 1996).

Moreover, a court may, at its discretion, consider factors not specifically mentioned in the Guidelines. See U.S.S.G. Ch. 1, Pt. A, intro. comment 4(b), at 6-7 (list of factors "is not exhaustive" and "[t]he Commission recognizes that there may be other grounds for departure that are not mentioned"); see also United States v. Barber, 119 F.3d 276, 280 (4th Cir. 1997) (en banc). Any factor "not expressly forbidden" by the Guidelines "potentially may serve as a basis for departure." United States v. Brock, 108 F.3d 31, 35 (4th Cir. 1997); see also Koon, 518 U.S. at 106-07. When faced with such an unmentioned factor, a court must consider the "`structure and theory' of the relevant individual guideline and the Guidelines as a whole, bearing in mind

5

that departures on the basis of factors not mentioned in the Guidelines will be `highly infrequent.'" Hairston, 96 F.3d at 106 (quoting Koon, 518 U.S. at 96).

Finally, the Guidelines "do[ ] not foreclose the possibility of an extraordinary case that, because of a combination of. . . characteristics or circumstances, differs significantly from the `heartland' cases covered by the guidelines in a way that is important to the statutory purposes of sentencing, even though none of the characteristics or circumstances individually distinguishes the case." U.S.S.G. § 5K2.0 (Commentary). The Sentencing Commission, however, noted that "such cases will be extremely rare." Id .

In sum, despite the generally mandatory nature of the Guidelines, in an atypical case a district court does enjoy significant discretion in deciding whether to depart from a given sentencing range. In fact, the Supreme Court made clear in Koon that, when reviewing a district court's decision to depart from a sentencing range, an appellate court must apply a "unitary abuse-of-discretion standard." Koon, 518 U.S. at 100; see also Barber, 119 F.3d at 282; Hairston, 96 F.3d at 106. Errors of law and clearly erroneous factual findings constitute abuses of discretion, but the Court expressly rejected the use of a bifurcated approach that would examine some portions of the sentencing court's rationale de novo and others under an abuse of discretion standard. See Koon, 518 U.S. at 100; see also Barber , 119 F.3d at 283.

Instead, "with due regard to the district court's institutional advantage" in sentencing proceedings, a reviewing court looks to "existing case law and the structure and theory of the Guidelines as a whole" in order to determine whether the district court abused its discretion in departing from the guideline range. Hairston , 96 F.3d at 106 (internal quotation marks omitted). In this way "[a]n appellate court generally gives `substantial deference' to the district court's decision to depart, but appellate review is not an `empty exercise.'" Id. (quoting Koon, 518 U.S. at 98).

With these principles in mind, we examine DeBeir's sentence.

III.

The Guidelines do not restrict the number of factors a court can consider when deciding whether to depart from the prescribed sen-

6

tencing range. See Burns v. United States, 501 U.S. 129, 136-37 (1991). The district court in this case reviewed a myriad of factors and circumstances that, taken together, assertedly warranted a three-level downward departure. Because the district court also suggested that several factors alone could serve as the basis for departure, we review those factors individually before considering their cumulative impact, together with the other circumstances relied on by the district court. In doing so we compare the facts presented here "with the facts of other Guidelines cases" that consider similar factors (when such cases are available), recognizing that the issue of whether this case is so unusual as to warrant a departure is "determined in large part by [this] comparison." Koon, 518 U.S. at 98; Hairston, 96 F.3d at 106.

A.

The district court considered DeBeir's "unique psychological con-dition" and unusual susceptibility to abuse in prison as a basis for departure. DeBeir's attorney argued that, "[w]herever he goes if incar-cerated, Mr. DeBeir will be categorized as a sexual offender and will be subjected to heightened abuse and danger." The defense also noted that, while DeBeir was detained in a local jail, other detainees repeat-edly told him to "watch his back." In addition, an expert testified that DeBeir was "extremely sensitive" and more"subject to responding to stress than most people"; for these reasons the expert concluded that DeBeir was "a lot more likely to be psychologically damaged by a longer period of incarceration" than "most people." On the basis of such evidence, the district court found that any future incarceration would have a "devastating" effect on DeBeir.

To the extent that this conclusion boils down to a finding that, due to the nature of DeBeir's criminal conduct, he will be harassed in prison, we cannot see how this brings the case outside the heartland. All defendants convicted of this particular offense are potentially sub-ject to such abuse. Granting a departure based on the nature of the crime "would eviscerate the recommended range for this crime and undermine the goals of the Sentencing Reform Act." United States v. Wilke, 156 F.3d 749, 754 (7th Cir. 1998). As the Eighth Circuit recently explained, a defendant's "mere membership in a class of offenders that may be targeted by other inmates cannot make his case extraordinary . . . [o]therwise every [such offender] would be eligible

7

for a departure, thwarting the Guidelines' sentences for that sort of crime." United States v. Kapitzke, 130 F.3d 820, 822 (8th Cir. 1997) (reversing departure for susceptibility to abuse in prison that was based on status as child pornographer and remanding to consider remaining valid factor alone). Indeed, if such a departure were routinely permitted, "[t]here would be no heartland of cases." Wilke, 156 F.3d at 754; see also United States v. Drew, 131 F.3d 1269, 1271 (8th Cir. 1997) (reversing departure based "simply" on defendant's status as child pornographer and his naivete where "there is no good reason to believe [defendant] is exceedingly vulnerable to victimization given his average size and good health").

To the extent the district court found that, regardless of his crime, DeBeir's psychological makeup renders him extremely vulnerable to abuse in prison, its ruling relied upon a permissible, though not encouraged, basis for departure. The Guidelines do not list extreme vulnerability as a departure factor. However, the Guidelines do discourage district courts from relying solely on mental, emotional, or physical condition in making departure decisions. See U.S.S.G. §§ 5H1.3; 5H1.4.

In Koon, the Court upheld a departure based on susceptibility to abuse in prison, deferring to the district court's conclusion that the defendants -- police officers convicted of brutally beating motorist Rodney King -- were "particularly likely to be targets of abuse during their incarceration" because of the notoriety surrounding their crimes. 518 U.S. at 111-12. Similarly, the Second Circuit in United States v. Lara, 905 F.2d 599 (2d Cir. 1990), upheld the district court's downward departure based on the "extraordinary situation because of the defendant's particular vulnerability" in which "[t]he severity of [the defendant's] prison term [was] exacerbated by his placement in solitary confinement as the only means of segregating him" for his protection. Id. at 603. In Lara, the court specifically noted that the defendant's "diminutive size, immature appearance and bisexual orientation" had already resulted in abuse, in the form of other inmates attempting to coerce the defendant into becoming a prostitute for their personal and financial gain. Id. at 601-03.

In United States v. Maddox, 48 F.3d 791 (4th Cir. 1995), we likewise concluded that extreme vulnerability in prison is a factor that the

8

Guidelines did not take into consideration and which could, in proper circumstances, warrant departure. Id. at 798. But we cautioned that "extreme vulnerability as a ground for departure . . . should be construed very narrowly" and held that the district court's unsubstantiated findings that the defendant was "easily led, susceptible to misuse by others, meek and cautious in demeanor, and slight in appearance" was not enough to bring the case outside the heartland. Id.

Several of our sister circuits have reached similar conclusions. For example, the Seventh Circuit noted that, while courts are permitted to review this factor, it should be "reserved for extraordinary situations." Wilke, 156 F.3d at 753. The Wilke court held that the defendant's status as a sexual offender who targeted minors, coupled with his passive and meek demeanor, did not provide a sufficient basis for a departure. Id. at 752-54. The Eighth Circuit similarly found no "substantial atypicalities" to warrant a downward departure where the defendant was a 67-year old woman with a long history of victimization through abuse because it found no convincing evidence that she was particularly susceptible to becoming a victim in prison as well. See United States v. Tucker, 986 F.2d 278, 279-80 (8th Cir. 1993).

When we compare the facts of these cases with the facts of the case at hand, we cannot conclude that DeBeir has demonstrated such severe susceptibility to abuse in prison or unique psychological fragility as to warrant a departure based on this factor. Although DeBeir allegedly was taunted while briefly in the Baltimore City Jail, his situation does not come close to the abuse actually suffered by the defendant in Lara, upon which DeBeir heavily relies. See 905 F.2d at 601-03. Nor do the circumstances here create a potential for abuse akin to that found in Koon. See 518 U.S. at 111-12. Even DeBeir's own expert, although noting the likely impact of future incarceration on DeBeir, determined that he did not suffer any post-traumatic stress disorder from his stay in the local jail. We find nothing atypical about a defendant with no prior experience with incarceration finding such an incident stressful. Because "[e]xcept under truly extraordinary circumstances, prisons exist for those who commit crimes, not just for tough criminals," Maddox, 48 F.3d at 798, and because DeBeir has not shown that his is such an extraordinary case, this factor cannot support the departure on its own.

9

The district court also examined DeBeir's status as a resident alien and its potential impact on his incarceration. Specifically, the court noted that if DeBeir were considered a deportable alien, he might be ineligible for certain less restrictive confinement alternatives. Although the Guidelines prohibit reliance on national origin, see U.S.S.G. § 5H1.10, they do not mention alienage as a departure factor; it therefore serves as a potential basis for departure. Indeed, courts have much debated the question of the extent to which they can consider alienage in departure decisions.

Initially, the Second Circuit concluded that courts could consider alienage when "its effect[s] [are] beyond the ordinary," but determined that certain factors associated with alienage, including unavailability of preferred confinement options, additional detention prior to deportation, deportation itself, and separation from family in the United States, could never serve as the basis for departure. United States v. Restrepo, 999 F.2d 640, 644-47 (2d Cir. 1993). It therefore held that nothing in the case before it -- a drug importation and possession case in which the defendant was a legal alien with an American wife, three children and several siblings residing in the United States -- was so unusual as to bring it outside the heartland. Id. Several other circuits followed this reasoning. See United States v. Veloza, 83 F.3d 380 (11th Cir. 1996); United States v. Nnanna, 7 F.3d 420 (5th Cir. 1993); United States v. Mendoza-Lopez, 7 F.3d 1483 (10th Cir. 1993).

All of these cases, however, pre-date Koon, which clarified that a district court is free to consider any factor not prohibited by the Guidelines. See Koon, 518 U.S. at 106-07. With this newly articulated directive in mind, the Seventh Circuit recently concluded that "[t]he district court is . . . free to consider whether[defendant's] status as a deportable alien has resulted in unusual or exceptional hardship in his conditions of confinement." United States v. Farouil, 124 F.3d 838, 847 (7th Cir. 1997); see also United States v. Charry Cubillos, 91 F.3d 1342 (9th Cir. 1996). Similarly (albeit prior to Koon), the D.C. Circuit ruled that a defendant's alienage could serve as the basis for departure "where the defendant's status as a deportable alien is likely to cause a fortuitous increase in the severity of his sentence." United States v. Smith, 27 F.3d 649, 655 (D.C. Cir. 1994) (directing district court to review factor on remand).

10

Several district courts have granted a departure based on alien status in cases where that status caused the increased severity in punishment. For example, in <u>United States v. Bakeas</u>, 987 F. Supp. 44 (D. Mass. 1997), the court granted a downward departure to a permanent resident alien who had lived in the United States for 20 years. <u>Id</u>. at 51-52. The court reasoned that the case was unusual and outside the heartland because while Bakeas, an alien, would have to serve his time in a medium security facility in another state, judges routinely sentence citizens convicted of the same offense (bank embezzlement) to minimum security prison camps or local community treatment centers for their entire confinement period. <u>Id</u>. at 46-52. In <u>United States v. Simalavong</u>, 924 F. Supp. 610 (D. Vt. 1995), the court granted a departure based on alienage because of the "extraordinary" fact that the only reason defendants were subjected to imprisonment (as opposed to probation or home detention) was their status as aliens. <u>Id</u>. at 612-13; <u>see also United States v. Bioyo</u>, 1998 WL 850815, at *3 (N.D. Ill. Dec. 2, 1998) (memorandum). <u>But cf. United States v. Angel-Martinez</u>, 988 F. Supp. 475, 482-84 (D.N.J. 1997) (no basis for departure where defendant simply argued that, as a general matter, deportable aliens are treated more harshly than citizens in sentencing).

Unlike Bakeas, Simalavong, and Bioyo, DeBeir's alien status was not the basis for his ineligibility for less restrictive confinement. Rather, the record before us reflects (and DeBeir concedes) that his inability to find a halfway house willing to take him stemmed from the nature of his offense and not from his alien status. With no evidence that DeBeir's alien status had a direct adverse impact on his incarceration, this factor can hardly provide a basis for separating his case from the norm. <u>See United States v. Martinez-Villegas</u>, 993 F. Supp. 766, 781 (C.D. Cal. 1998) (declining to depart downward based on alienage in part because no evidence that ineligibility for halfway house was due to alien status rather than offense category); <u>see also United States v. Pozzy</u>, 902 F.2d 133, 139-40 (1st Cir. 1990) (unavailability of a halfway house not enough in itself to bring case outside heartland because Guidelines nowhere indicate that the Commission intended or expected that such a facility would be available in every case).

In addition, the district court reviewed the collateral consequences of incarceration on DeBeir's employment opportunities. The court

11

found that sentencing would have an "exponentially adverse effect" on DeBeir because of the difficulty that someone his age (58) would have in obtaining employment in his field of international education following a prison sentence. As with vulnerability in prison, although the Guidelines do not mention adverse impact on employment, the Koon court recognized that it can potentially provide a valid basis for departure. See Koon, 518 U.S. at 109-10.

In Koon, the Court rejected the Government's argument that impact on employment was an impermissible factor because it too closely tracked socio-economic status, a prohibited factor. Id. The Court, however, went on to conclude that the challenged sentences did not so severely impact the defendants' careers (in law enforcement) as to take their cases outside the heartland. Id. Specifically, the Court explained that "it is not unusual for a public official who is convicted of using governmental authority to violate a person's rights to lose his or her job and to be barred from future work in that field." Id. at 110. Similarly, it would not be unusual for an educator, convicted of traveling interstate to engage in a sexual act with a minor, to be barred from future employment in education. Applied here, we find nothing atypical or extraordinary about the consequences of incarceration on DeBeir's employment.

We suspect, however, that the district court did not base its ruling as to this factor solely on the employment consequences of DeBeir's incarceration. To the extent that the court relied on DeBeir's age and suspected inability to find a position "in keeping with his prior employment and expertise," we note that the Guidelines prohibit reliance on socio-economic status and discourage, but do not forbid, reliance on age and employment record for purposes of departure determinations. See U.S.S.G. §§ 5H1.1; 5H1.5; 5H1.10; see also 5H1.2 (educational level as discouraged factor).

With respect to age, the Tenth Circuit in United States v. Bowser, 941 F.2d 1019 (10th Cir. 1991), upheld a departure from the applicable criminal history category based in part on the defendant's age (20) at the time of the prior offenses. Id. at 1024-26. Explaining that age alone would have been an insufficient basis for departure, the Bowser court permitted the departure because of a "unique combination of factors," including the close proximity in time of the prior offenses

12

and the fact that the defendant had served concurrent sentences for those convictions, which combined such that the applicable criminal history category "significantly over-represented the seriousness of [defendant's] criminal history." Id. With regard to employment history as a factor, the Eighth Circuit in United States v. Big Crow, 898 F.2d 1326 (8th Cir. 1990), upheld a downward departure based in part on consideration of the defendant's exceptional 7-year steady employment record in "not too pleasant of a job," which enabled him to provide adequately for his family on an Indian Reservation with 72% unemployment and an estimated per capita income of $1,042. Id. at 1331-32. DeBeir, a well-educated, mature man with a strong (but not extraordinary) employment record did not offer evidence in any way equivalent to that presented in these cases; the record here cannot support a departure based on either age or employment history alone.

The district court also examined the impact of the negative publicity DeBeir received concerning his arrest, indictment, and guilty plea. Again, although the Guidelines do not mention publicity as a departure factor, the Koon Court recognized that this factor could contribute to a valid departure. 518 U.S. at 111-12. In Koon, the defendants encountered "widespread publicity and emotional outrage . . . from the outset," including detailed national coverage, repeated airing of a videotape of the crime, and violent riots surrounding their initial acquittal on state charges. Id. at 85-88, 112. The Supreme Court considered the impact of this negative publicity as a factor leading to the defendants' extreme vulnerability to abuse in prison, which in turn served as a proper basis for a downward departure. Id. at 112.

Newspapers in Baltimore, New York, and Belgium reported on DeBeir's case. The media coverage in this case, however, does not approach the extent of negative publicity at issue in Koon. Id. at 111-12. In United States v. Blount, 982 F. Supp. 327 (E.D. Pa. 1997), the court considered the publicity received by a corrections officer convicted of conspiracy to distribute drugs, which"made quite a little stir," and determined that it "bears little resemblance to Koon." Id. at 336. The facts require a similar conclusion here. Certainly it is not atypical for news organizations in the area where an arrest occurred, in the area where the defendant resides, and even in the area where the defendant was raised to cover such an incident. DeBeir has not shown anything extraordinary about this case in terms of media atten-

13

tion or its impact on his potential incarceration that brings it outside the heartland.

Additionally, the district court found that DeBeir is not a pedophile and relied on this factor in departing downward. The Guidelines generally do not mention this as a departure factor. Nor does the guideline applicable to DeBeir anywhere suggest, let alone require, that its provisions apply only to pedophiles or other sexual deviants. See U.S.S.G. § 2A3.2. Although the consideration of DeBeir's lack of psychological pathology is not forbidden and so provides a possible basis for departure, it does seem to us, at least in this case, an exceedingly odd basis for granting a downward departure. In order to depart downward on this factor, a court would have to conclude that, in the heartland of cases, all defendants convicted of traveling interstate to engage in a sexual act with a minor technically qualify as pedophiles. Without any evidence of this, we are unwilling to so conclude. Cf. United States v. Wind, 128 F.3d 1276, 1278 (8th Cir. 1997) (refusing to make such an assumption with respect to defendants who violate child pornography statutes); United States v. Studley, 907 F.2d 254, 258-59 (1st Cir. 1990) (reversing downward departure because "nothing exceptional" about defendant convicted of possessing child pornography, despite fact that "he was not a child molester and [he] kept his deviancy to himself").

Finally, the district court considered the "victimless" nature of DeBeir's crime due to the fact that "Kathy" was actually an FBI agent. Again the Guidelines do not forbid consideration of this factor and so it is a potential basis for departure. In this case, however, we find nothing unusual about the fact that the intended victim of DeBeir's actions was a federal agent. See United States v. Costales, 5 F.3d 480, 485-87 (11th Cir. 1993) (denying a downward departure based on mitigating role, and noting that the Guidelines contemplate that in some cases all the other actors will be undercover agents). Indeed, such covert or "sting" operations are not uncommon. See, e.g., Wind, 128 F.3d at 1277; Drew, 131 F.3d at 1270; United States v. Morin, 80 F.3d 124, 126, 129 (4th Cir. 1996); Bowser, 941 F.2d at 1021; Studley, 907 F.2d at 256; United States v. Deane, 914 F.2d 11, 12 (1st Cir. 1990).

Furthermore, the statute that DeBeir violated and to which the guideline applies punishes traveling interstate with the intent to

14

engage in a sexual act with a minor. See 18 U.S.C.A. § 2423(b). Thus the relevant concern is DeBeir's intent rather than the true age or identity of his intended victim. As we noted in a case involving an agent posing as a hired assassin, the fact that a major player in the crime was a federal agent is "simply irrelevant to whether a particular defendant falls within the heartland of" the applicable guideline. Morin, 80 F.3d at 129.

Thus, none of these factors in and of itself justifies the court's three-level downward departure.

B.

We must now examine whether this is one of the rare situations in which the cumulative effect of all of the circumstances in the case brings it outside the heartland. See U.S.S.G. § 5K2.0 (Commentary). In so doing, we first review several additional factors that the district court found could not serve as the basis for a departure alone but nonetheless contributed to its decision to grant the departure.

The first of these additional factors is DeBeir's post-offense rehabilitation effort. The Guidelines direct courts to take this factor into account when determining whether a defendant is entitled to a downward adjustment for acceptance of responsibility. See U.S.S.G. § 3E1.1 (Commentary). As an encouraged factor already taken into account -- and, in this case, already the basis for a two-level downward adjustment -- "post-offense rehabilitation may provide an appropriate ground for departure only when present to such an exceptional degree that the situation cannot be considered typical of those circumstances in which an acceptance of responsibility adjustment is granted." Brock, 108 F.3d at 35; see also Barber, 119 F.3d at 281 n.4. After his indictment, DeBeir attended approximately 32 counseling sessions; the district court noted his efforts but determined that they were not extraordinary.

The court also considered DeBeir's asserted extreme remorse. Although recognizing the evidence of remorse in the record, including DeBeir's statements that he felt remorse and his attorney's comments concerning the shame and guilt confronting DeBeir as a result of his

15

behavior, the court concluded that such evidence was not atypical or extraordinary and did not warrant a departure on its own.

Finally, the court found that DeBeir's behavior could not be considered legally aberrant. See United States v. Glick, 946 F.2d 335 (4th Cir. 1991). In Glick, we explained that, because the Guidelines already take into account a defendant's criminal history, aberrant behavior must "mean[ ] something more than merely a first offense"; instead "[a] single act of aberrant behavior suggests a spontaneous and seemingly thoughtless act rather than one which was the result of substantial planning." Id. at 338 (internal quotation marks omitted). The district court noted that the offense conduct in this case included "an aspect of aberrant behavior," in that it did not seem to be chronic or even habitual over an extended period. The court acknowledged, however, that DeBeir's actions did not fit the Glick definition and, for this reason, the "aberrant" nature of the conduct alone could not provide a proper basis for departure.

As an appellate court we lack authority to review the district court's decision that departure on the basis of these factors taken individually was not warranted. See Brock, 108 F.3d at 32; see also United States v. Bayerle, 898 F.2d 28 (4th Cir. 1990). But we can, of course, review the court's ultimate decision to depart from the Guidelines range. We therefore evaluate these additional factors only in connection with the factors outlined above to determine whether this case, considered as a whole, is so extraordinary as to fall outside the heartland. See U.S.S.G. § 5K2.0 (Commentary).

As noted above, the Guidelines clearly contemplate that even if none of the factors at issue taken individually warrants a departure, the cumulative effect of all of the circumstances of the case may, in some instances, bring it outside the heartland. This, however, is not such a case. We have studied the record thoroughly, including the parties' fine briefs, and have reviewed the entire complement of factors and circumstances contributing to the district court's departure decision and cannot conclude that any factor or group of factors brings this case outside the norm. The circumstances of this case are far removed from those found exceptional in existing case law; even when taken together, they cannot justify a departure.

16

The crux of the district court's contrary finding seems to be its conclusion that DeBeir is not the "type of offender that the guideline is really aimed at targeting." We cannot agree. In fact, offenses of this nature are increasingly committed with the help of the internet, and in such cases the offender must necessarily have had access to and the skills to use a computer. See, e.g., United States v. Johnson, ___ F.3d ___, 1999 WL 335318 (10th Cir. May 27, 1999); United States v. Byrne, 171 F.3d 1231 (10th Cir. 1999); United States v. Young, 131 F.3d 138, 1997 WL 745826 (4th Cir. 1997) (unpublished). Thus we find nothing extraordinary about the particular factual landscape of this case -- i.e., that DeBeir is an intelligent and well-educated adult, has a strong employment history, had no prior exposure to life in prison, is neither a chronic offender nor a pedophile, was caught in a sting operation, received coverage in the media, later attempted counseling, and experienced remorse -- that brings it outside the heartland of cases sentenced under this guideline.

Although in another case some or all of the factors considered here might well warrant a downward departure, they do not permit a departure in this case. In the end, regardless of the number of factors a sentencing court considers when making a departure determination a court cannot stray from the sentencing range dictated by the Guidelines unless the case is highly unusual. See Koon, 518 U.S. at 92-95. We remain "well aware of the difficulties that . . . the Sentencing Guidelines impose on district courts faced with the unenviable task of sentencing criminals who present sympathetic cases," Maddox, 48 F.3d at 799-800, but the record before us simply cannot support the three-level downward departure awarded here.

IV.

Neither individually nor in combination are the circumstances, characteristics, or consequences of this case so unique or extraordinary as to bring it outside the heartland of cases sentenced under this guideline. The district court therefore abused its discretion in granting the three-level downward departure. We vacate DeBeir's sentence and remand for resentencing in accordance with this opinion.

VACATED AND REMANDED

17