UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
           *Plaintiff-Appellant,*

v.                                          No. 00-4038

KIMBERLY B. GOODMAN,
                   *Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Graham C. Mullen, Chief District Judge.
(CR-98-317)

Argued: January 26, 2001

Decided: March 20, 2001

Before WILKINS, MOTZ, and KING, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Kenneth Davis Bell, OFFICE OF THE UNITED
STATES ATTORNEY, Charlotte, North Carolina, for Appellant.
Claire J. Rauscher, Charlotte, North Carolina, for Appellee. **ON
BRIEF:** Mark T. Calloway, United States Attorney, Brian Lee Whis-
ler, Assistant United States Attorney, OFFICE OF THE UNITED
STATES ATTORNEY, Charlotte, North Carolina, for Appellant.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

The United States appeals the sentence imposed by the district court on Kimberly Goodman following her guilty plea to engaging in a monetary transaction in criminally derived property, *see* 18 U.S.C.A. § 1957(a) (West 2000).\* The Government maintains that the district court abused its discretion in departing downward from the applicable guideline range. We conclude that the district court acted within its discretion and accordingly affirm the sentence.

I.

In September 1997, Steven Chambers and several coconspirators stole over $17 million from the Loomis Fargo Armored Car facility in Charlotte, North Carolina. Chambers was the mastermind of the scheme and engaged in various actions to conceal the ill-gotten gains. For example, Chambers prevailed upon friends and family members to rent safe-deposit boxes into which the stolen cash was placed.

Shortly after the theft, Chambers contacted Michael Goodman, who was an acquaintance. Michael's wife, Kimberly, was employed by a bank in Salisbury, North Carolina. Through Michael, Chambers obtained Kimberly's assistance in purchasing a bank check with $200,000 of the stolen money. The Goodmans were paid $10,000 for their efforts. In February 1998, Chambers contacted the Goodmans about acquiring another bank check. In a telephone call that was recorded (apparently by law enforcement authorities using a wiretap), Kimberly advised her husband, who in turn advised Chambers, how

---

\*Kimberly's husband, Michael, pled guilty to this same offense, and the district court sentenced him, pursuant to a departure, to serve five months in a community confinement center and five months on house arrest. The Government did not appeal.

to structure the transaction so as to avoid detection. This transaction was never completed.

Kimberly subsequently was indicted and pled guilty pursuant to a plea agreement. At sentencing, the district court determined that her offense level was 15. This offense level, combined with Kimberly's criminal history category of I, resulted in a guideline range of 18 to 24 months. However, the district court departed downward to offense level 10 and imposed a sentence of five years probation, 12 months of which were to be served on house arrest with electronic monitoring. The district court based its departure on findings that Kimberly had made extraordinary restitution, that the offense constituted a single act of aberrant behavior, and that Chambers had engaged in extreme predatory conduct. Alternatively, the court ruled that if any one of these factors did not support the departure, the cumulative effect of all of them did. *See United States Sentencing Guidelines Manual* § 5K2.0, p.s., comment. (1998) ("The Commission does not foreclose the possibility of an extraordinary case that, because of a combination of . . . circumstances, differs significantly from the 'heartland' cases covered by the guidelines . . . even though none of the . . . circumstances individually distinguishes the case.").

Several findings by the district court regarding its departure decision are particularly relevant to our disposition of this appeal. With respect to Chambers' conduct, the court found that Chambers was "an evil man" who preyed on family and friends who, due to naivety and strained financial circumstances, were susceptible to Chambers' predatory conduct. J.A. 88. The court also noted that before coming into contact with Chambers, Kimberly had been an entirely law-abiding citizen and that the Goodmans' precarious financial situation—which was complicated by an ongoing battle for custody of Michael's son from a previous marriage—rendered them particularly vulnerable to Chambers.

## II.

Congress has instructed that a district court must impose a sentence within the range that results from the proper application of the guidelines "unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken

into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C.A. § 3553(b) (West 2000). Any factor, except those upon which the Commission has specifically forbidden reliance, may provide a basis for departure under appropriate circumstances. *See Koon v. United States*, 518 U.S. 81, 94 (1996); U.S.S.G. Ch. 1, Pt. A, comment. 4(b), p.s. (explaining that with the exception of those factors specifically forbidden as bases for departure in the guidelines, the Commission did "not intend to limit the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds for departure in an unusual case").

In order to determine whether a particular factor may support a departure, the court must ascertain which of the following categories the factor falls into: (1) the factor was encouraged by the Commission as a basis for departure and was either (a) taken into account in the applicable guideline itself or (b) not taken into account in the guideline; (2) the factor was discouraged by the Commission as a basis for departure; or (3) the factor was unmentioned by the Commission. *See Koon*, 518 U.S. at 94-96. *Koon* instructs that each category entails a different inquiry. *See id.* at 95-96. If a factor is one upon which the Commission encourages departure and it is not taken into account by the applicable guideline, a court may exercise its discretion and depart on that basis. *See id.* at 96. If an encouraged factor is taken into account in the applicable guideline, or if a factor is a discouraged one, then departure is permissible "only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." *Id.* Similarly, if a factor is neither encouraged nor discouraged, but is listed by the Commission as one appropriately considered in applying an adjustment to the guidelines, a court may depart only if the factor is present to such an exceptional or extraordinary degree that it removes the case from the heartland of situations to which the guideline was fashioned to apply. *See United States v. Hairston*, 96 F.3d 102, 107 (4th Cir. 1996). Finally, if a factor is one that is unmentioned by the guidelines, a court must, taking into consideration "the structure and theory of both relevant individual guidelines and the Guidelines taken as a whole," determine whether the circumstances presented are sufficient to remove the case from the heartland of the applicable guideline. *Koon*, 518 U.S. at 96 (internal quotation marks omitted).

We afford substantial deference to the departure decisions of the district courts. *See id.* at 98. "[T]he determination of whether certain aspects of a case are unusual enough to take it outside the heartland of situations encompassed within the applicable guideline is essentially a factual inquiry, necessarily involving a comparison of the facts of the situation under consideration with the usual case to which the guideline in question applies." *United States v. Barber*, 119 F.3d 276, 282 (4th Cir. 1997) (en banc). As the *Koon* Court noted, "[d]istrict courts have an institutional advantage over appellate courts in making these sorts of determinations, especially as they see so many more Guidelines cases than appellate courts do." *Koon*, 518 U.S. at 98.

With these principles in mind, we turn to examine the particular departure factors identified by the district court. We first conclude that the district court abused its discretion in departing downward on the basis of extraordinary restitution. The circumstances surrounding Kimberly's payment of restitution do not demonstrate the kind of unusual acceptance of responsibility that is necessary to justify a downward departure on the basis of extraordinary restitution. *See Hairston*, 96 F.3d at 108-09. The district court also erred in departing downward on the basis that Kimberly's offense constituted a single act of aberrant behavior. *See United States v. Glick*, 946 F.2d 335, 338 (4th Cir. 1991) (explaining that "[a] single act of aberrant behavior suggests a spontaneous and seemingly thoughtless act . . . because an act which occurs suddenly and is not the result of a continued reflective process is one for which the defendant may be arguably less accountable" (internal quotation marks omitted)). Finally, although a very close case, under the circumstances we cannot conclude that the district court abused its discretion in departing downward on the basis of Chambers' extreme predatory conduct.

III.

For the reasons set forth above, we conclude that the district court did not abuse its discretion in departing downward. Accordingly, we affirm.

*AFFIRMED*